**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Rogelio SALCEDO–LOPEZ,
Defendant–Appellant.**

No. 89–50225.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 13, 1990.

Decided June 29, 1990.

Carlton F. Gunn, Deputy Federal Public Defender, Los Angeles, Cal., for defendant-appellant.

Stefan D. Stein, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before BROWNING, NOONAN and FERNANDEZ, Circuit Judges.

PER CURIAM:

Rogelio Salcedo–Lopez and a confidential informant for the United States Department of State engaged in three transac-

tions for the purchase of false birth certificates and Social Security cards. The informant paid Salcedo $100 for the first set of documents, and $120 for each of two additional sets. The first two sets of documents were delivered to the informant. The government found the third set in Salcedo's possession during a search pursuant to a warrant.

Salcedo was charged with two counts of transferring false identification documents and one count of possessing false identification documents, in violation of 18 U.S.C. § 1028(a)(2), (3). He pled guilty to one count of transferring false identification documents. In exchange, the government recommended a two-level reduction in Salcedo's offense level for acceptance of responsibility and dismissed the remaining two counts at the time of sentencing.

Salcedo's presentence report recommended he pay "[r]estitution in the sum of $100 (Count 1), $120 (Count 2) and $120 (Count 3) ... to the U.S. Department of State" pursuant to the Victim and Witness Protection Act of 1982, 18 U.S.C. §§ 3663, 3664. At the sentencing hearing, Salcedo argued the Act did not apply because the government was not a victim under the facts of this case; instead, he argued, it voluntarily paid for the documents as a cost of investigation.[1] The district court rejected this argument and sentenced Salcedo to a three-year term of probation with specific conditions, including a $340 award of restitution to the government. We reverse.

■ Whether the government is a victim that has suffered a loss under the Act when it voluntarily pays for contraband while investigating a crime is an issue of statutory interpretation reviewed de novo. *United States v. Ruffen,* 780 F.2d 1493, 1496 (9th Cir.1986).

The Act provides:

(a) The court, when sentencing a defendant convicted of an offense under this title ..., may order, in addition to

... any other penalty authorized by law, that the defendant make restitution to any victim of such offense.

(b) The order may require that such defendant—

(1) in the case of an offense resulting in damage to or loss or destruction of property of a victim of the offense—

(A) return the property to the owner of the property or someone designated by the owner....

18 U.S.C. § 3663 (formerly codified at 18 U.S.C. § 3579).

■ Any loss for which restitution is ordered must result directly from the defendant's offense. *United States v. Kenney,* 789 F.2d 783, 784 (9th Cir.1986) (citing *United States v. Tyler,* 767 F.2d 1350, 1351 (9th Cir.1985)). The costs of investigating and prosecuting an offense are not direct losses for which restitution may be ordered. *Id.* (salaries of bank employees who testified at trial are costs of prosecution too remote to form the basis for restitution); *see Tyler,* 767 F.2d at 1352 (§ 3651, predecessor to § 3663, does not authorize award of restitution for decline in value of stolen timber held for evidentiary purposes); *United States v. Vaughn,* 636 F.2d 921, 923 (4th Cir.1980) ("costs of investigation result only indirectly from the offense of income tax violation").

■ The government's confidential informant paid Salcedo in order to obtain evidence of Salcedo's criminal activity. The government did not "lose" money as a direct result of Salcedo's activities; it spent money to investigate those activities. The government's payments to Salcedo are no more directly related to the crime than any payments the government may have made to the informant. These costs are "too remote to form the basis for restitution." *Kenney,* 789 F.2d at 784 (quotation omitted).

---

1. Salcedo also argues on appeal that restitution may be ordered only for the offense of which he was convicted, that is, count one. In light of *Hughey v. United States,* — U.S. ——, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990), in which the Supreme Court agreed with Salcedo's argument, we decide only whether Salcedo may be ordered to pay restitution for count one.

For similar reasons, the government is not a victim under the Act. Salcedo did not defraud the government.[2] The government wanted false identification papers as evidence of criminal activity and obtained them; the government got what it paid for.[3]

The government argues whether it voluntarily paid for the documents is irrelevant to whether it suffered a loss, citing *United States v. Dougherty*, 810 F.2d 763, 773 (8th Cir.1987). In *Dougherty*, an undercover agent sold $950 in food stamps to the defendant for $480. The Eighth Circuit held the government lost $470 and upheld the order of restitution under § 3651. *Dougherty*, however, is in direct conflict with the Ninth Circuit cases discussed above. *See Kenney*, 789 F.2d at 784; *Tyler*, 767 F.2d at 1352.

The government argues the order of restitution "should be upheld for the simple reason that a defendant should not be permitted to benefit financially from his crime." This argument may be appealing as a matter of public policy, but public policy is the province of Congress, not the courts. The primary purpose of the Victim and Witness Protection Act, unlike a forfeiture statute, is not to punish the defendant but to compensate the victim. *See United States v. Dudley*, 739 F.2d 175, 177 (4th Cir.1984). When, as here, no victim has suffered a loss, the government must use other means to prevent the defendant from profiting from his crime. *See, e.g.,* 18 U.S.C. § 1028(b) (punishment for transferring false identification documents may include fine up to $25,000).

REVERSED.

---

**2.** We reject Salcedo's argument the Act is never applicable to the government. When the government loses money as the direct result of an offense, it is as entitled to restitution as any other victim of an offense. *See, e.g., Ruffen*, 780 F.2d at 1496 (defendant ordered to pay restitution to county welfare agency when he caused it improperly to pay AFDC benefits).

**3.** In fact, it would be difficult to say Salcedo defrauded anyone who purchased documents from him. Salcedo was in the business of selling false identification papers. Those who bought from him did so precisely because they wanted false papers.