UNITED STATES of America, Plaintiff,

v.

Morgan FINLEY, Defendant.

No. 87 CR 364–1.

United States District Court,
N.D. Illinois, E.D.

Dec. 17, 1991.

Michael J. Shepard and Jacqueline Stern, Asst. U.S. Attys., Chicago, Ill., for plaintiff.

Louis B. Garippo and Susan G. Feibus, Kane, Obbish, Propes & Garippo, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ILANA DIAMOND ROVNER, District Judge.

## I. INTRODUCTION

Defendant Morgan Finley was Clerk of the Circuit Court of Cook County, Illinois from 1974 through 1988. On July 3, 1989, a jury convicted Finley on charges of racketeering, interstate travel to promote unlawful activity, and extortion. On August 25, 1989, the Court sentenced Finley to serve a ten-year period of incarceration and ordered him to pay a $50,000 fine and restitution in the amount of $25,000. Finley's conviction and sentence were affirmed on appeal. *United States v. Finley*, 934 F.2d 837 (7th Cir.1991). Pending before the Court is Finley's motion, presumably pursuant to "old" Fed.R.Crim.P. 35[1], for reduction and correction of his sentence. For the reasons set forth below, Finley's motion is granted in part and denied in part.

## II. DISCUSSION

Finley's motion addresses three aspects of the Court's judgment order: the term of incarceration, the payment of interest upon his fine, and the requirement that he pay restitution. The Court takes each matter in turn below.

### A. *Term of Incarceration*

Finley has been incarcerated at the federal prison camp in Oxford, Wisconsin since November 6, 1989. Under current parole guidelines, Finley will be eligible for release after he serves one-third, or 40 months, of his ten-year sentence. Finley argues that his sentence of ten years should be reduced to an amount less than five years so that his period of actual incarceration will be reduced to the slightly more than two years he has already served. In the alternative, Finley asks that he be permitted to serve the last six months of his incarceration in a halfway facility.

Finley cites three circumstances in support of a reduction of his prison term. First and foremost, Finley relies upon the precarious state of his wife's health. Betty Jane Finley was diagnosed as suffering from breast cancer shortly after her husband was incarcerated. She underwent surgery in May of 1990, followed by a year of intensive chemotherapy and radiation treatment. Given the extent to which the cancer had spread by the time Mrs. Finley had surgery, her doctors believe there is a significant likelihood that the cancer will recur. Finley seeks early release so that he may spend time with his wife in what he believes may be her final days.

In addition to his wife's illness, Finley cites his own remorse for the criminal conduct which led to his conviction. Finley writes:

I know that two years ago following a long and difficult trial for all involved, the Court imposed a sentence which it believed was appropriate. I know, too, that in the aftermath of that ordeal, I may not have appeared as repentant as I might have. However, in the two years since my conviction, I have come to terms with my misconduct. I realize this situation was brought about by my succumbing to the temptation to take "easy money" being thrown my way. I not only violated my oath but ruined my fam-

---

**1.** The acts underlying Finley's conviction took place prior to November 1, 1987. Consequently, the former version of Rule 35 applies. Subsection (a) of the Rule provides that "the court may correct an illegal sentence at any time." Subsection (b) provides that "[a] motion to reduce a sentence may be made ... within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal...."

ily name. I am truly sorry for what I did.

(Motion for Reduction and Correction, Ex. G at 2.)

Finally, Finley notes that his behavior during incarceration has been exemplary. The progress report prepared by his case manager in February of 1990 discloses that Finley has been gainfully employed at the prison camp since his arrival. Finley works in the Education Department, performing a variety of clerical duties, and, in addition, tutoring other inmates in adult basic education and G.E.D. coursework. According to his counsel, Finley also serves as the camp's law librarian and photographer, among other informal duties. His case manager reports:

> [Finley] is considered to be a dependable employee who requires little supervision in completing his assigned tasks. He has maintained an outstanding response to supervision and relates very well with his peers. His initiative is considered to be good, and he displays a great deal of interest in his job. He takes a great deal of interest and pride in his work.

(Motion for Reduction, Ex. C at 1 ¶ C.)

The Court commends Finley for the contributions he has made to the community at Oxford and for his acceptance of responsibility for the crimes which brought him to that community. His evident interest in the affairs of the prison camp and the betterment of his fellow prisoners speak well of his humanity and compassion for others. The letter he has written to the Court in support of his motion speaks of his regret and remorse, and the Court accepts these feelings as genuine.

The Court's heart goes out to Mrs. Finley for the challenges she has faced in the past year. No judge could better understand what a tremendous test of faith and will a life-threatening illness like cancer poses to the body and spirit. To be forced to meet such a challenge without the companionship and assistance of one's spouse must make that test all the more painful and overwhelming. The Court feels enormous sympathy for her.

As much as it pains the Court to do so, however, it cannot reduce Finley's sentence by more than half as he requests. Any period of incarceration represents a heavy price for a human being to pay for his misdeeds. That Finley's imprisonment separates him from his wife at a time when she is struggling to overcome a grave illness is truly regrettable. Yet, however tragic this situation is, it cannot be forgotten that Finley is the individual responsible for it. Finley's crimes were reprehensible. By accepting bribes, he betrayed the public trust in his office. The fact that Finley was a highly powerful official within the Cook County court system rendered that betrayal all the more grave. Honesty and integrity are expected of all public officials, but most especially of the courts, whose power and efficacy depend upon the public's ability to trust them as fair and neutral arbiters of the law. Having sold his position as the head of the nation's largest unified court system, Finley must not only receive, but serve, a substantial term of imprisonment. Furthermore, Finley's sentence includes time imposed for threatening the lives of an FBI agent's children on two occasions. The Court found this behavior incomprehensible and deserving of particularly severe sanctioning. To reduce his sentence from ten to less than five years, as compelling as Finley's circumstances might be, would gloss over the severity of his offense and vitiate the deterrent value in the penalties imposed upon him.

The Court will, however, reduce Finley's sentence to a term of eight years. The sole circumstance which has persuaded the Court to grant this partial modification of the sentence is Mrs. Finley's illness. The gravity of his crimes precludes a more substantial reduction on this or any other ground.

The Court will also grant Finley's request for a recommendation that the last six months of his imprisonment be spent in a halfway facility. Indeed, the Court will request such a placement for the last 12 months of Finley's incarceration. Again, this request will be made only in light of

Mrs. Finley's difficult situation. The Court's authority does not extend beyond the ability to request this placement, but the Court will do what it can in this regard.

### B. *Interest on Fine*

Finley paid the full amount of the $50,000 fine imposed by this Court on July 11, 1991, approximately three weeks after the court of appeals issued its mandate affirming his conviction and sentence. Shortly thereafter, however, he learned of the government's position that he owed approximately $16,500 in interest on the fine for the period following sentencing during which it remained unpaid. *See* 18 U.S.C. § 3565(c)(1) (repealed; applicable to offenses committed prior to Nov. 1, 1987) (imposing interest on past due fines at the rate of 1.5 percent per month). Finley argues that he was unaware interest was accruing in the interim that the fine remained unpaid and that he should either be relieved of the interest entirely or that it should be calculated at the lower rate which applies to offenses after the date on which his occurred. *See* 18 U.S.C. § 3612(f)(2) (applicable to offenses committed on or after Nov. 1, 1987) (imposing interest at rate equal to coupon issue yield equivalent of auction of United States Treasury Bills).

 Although the judgment order in this case is silent as to when Finley was required to pay the fine, the Court finds him obligated to pay interest nonetheless under the relevant statutory provisions. The now-repealed version of the statute applicable to Finley's offense provides:

> A judgment imposing the payment of a fine or penalty shall—
>
> (A) provide for immediate payment unless, in the interest of justice, the court specifies payment on a date certain or in installments. . . .

18 U.S.C. § 3565(b)(1) (repealed). Unfortunately, this Court's judgment order failed to specify whether the fine was payable

immediately or at a later date. In light of the statutory requirement that one date or another be specified, the order was therefore ambiguous as to when the fine would become "past due" for purposes of the interest provisions set forth in § 3565(c)(1). *Compare* 18 U.S.C. § 3572(d) (payment of fine due immediately *unless* court provides for payment on a date certain or in installments). Under these circumstances, were it the case that interest did not accrue upon fines which are deferred, the Court would be inclined to relieve Finley of the obligation to pay interest. However, the statute provides that interest at the "past due" rate must be assessed even when the sentencing court explicitly provides for payment at a later date. 18 U.S.C. § 3565(b)(2).[2] Thus, whatever Finley may have understood as to when the fine was payable, there could have been no reasonable question as to his obligation to pay interest for the period during which the fine remained unpaid.

 The Court also declines to order interest calculated at the lower rate provided for in the current version of the statute. *See* 18 U.S.C. § 3612(f)(2). Finley cites no authority which would permit the Court to leaf through the old and new versions of the statute and invoke current provisions when they are favorable even though they are inapplicable to his offense. Section 3565 governs offenses committed prior to 1987 and this provision gives the Court no discretion to set interest at a rate other than the one set forth in the statute. *See* 18 U.S.C. § 3565(b)(2), (c)(1) (repealed) (interest "shall be computed on the unpaid balance at the rate of 1.5 percent per month"). *Compare* 18 U.S.C. § 3612(f)(2) (permitting modification of interest on fines by the court).

### C. *Restitution to the Government*

The evidence at trial demonstrated that Finley had accepted bribes totalling $25,000, and the Court ordered him to pay

---

**2.** Section 3565(c)(2) also provides that in the event a fine remains past due for more than 90 days, the defendant is subject to an additional penalty equal to 25 percent of the fine. The government has not invoked that provision here, and given the ambiguity in the judgment order as to when Finley was due to pay the fine, the Court would find such a penalty improper.

restitution in this amount. Finley challenges the propriety of restitution on three grounds. First, he argues that the judgment order was invalid as to the restitution because the order neither identified the purported victim of Finley's misconduct nor specified to whom restitution was to be made. Next, he argues that the evidence at trial demonstrated that the government did not in fact supply the money which he accepted as bribes.[3] Finally, Finley contends that restitution is improper in this case because the government cannot be deemed a legitimate victim entitled to restitution even if it did supply the money which funded the bribes he received. Because the Court concludes that the government cannot qualify as a "victim" to whom restitution may be ordered assuming it did supply the bribe money in this case, the Court need not address Finley's first two arguments.

■ As the government points out, Finley did not challenge the propriety of the restitution order on appeal. Nonetheless, his failure to raise the issue at that time does not constitute a waiver of his right to raise it now under Rule 35. As my brother Judge William T. Hart has observed:

> Rule 35(a) provides that an illegal sentence may be corrected at any time. It would be inconsistent with that Rule to hold that despite the fact that the Rule can be invoked at any time, issues raised pursuant to that Rule will be considered waived if not raised on direct appeal. Such a position is also inconsistent with the rule that illegal sentences must be corrected *sua sponte* by the court. *See Lee v. United States*, 400 F.2d 185, 188 (9th Cir.1968); *United States v. Allen*, 733 F.Supp. 1186 (N.D.Ill.1990).

*United States v. Makres*, 741 F.Supp. 727, 729 (N.D.Ill.1990), *judgment aff'd*, 937 F.2d 1282 (7th Cir.1991). *See United States v. Kovic*, 830 F.2d 680, 684 (7th Cir.1987) (an issue is waived for purposes of subsequent collateral review of federal sentence when it could and should have been raised on direct appeal *or* in Rule 35 motion), *cert. denied*, 484 U.S. 1044, 108 S.Ct. 778, 98 L.Ed.2d 864 (1988). *See also Callanan v. United States*, 364 U.S. 587, 589 n. 3, 81 S.Ct. 321, 322 n. 3, 5 L.Ed.2d 312 (1961); *United States v. Gelb*, 944 F.2d 52, 54 (2d Cir.1991); *Popeko v. United States*, 513 F.2d 771, 773 (5th Cir.), *cert. denied*, 423 U.S. 917, 96 S.Ct. 225, 46 L.Ed.2d 146 (1975).

■ Under the provisions of the Victim and Witness Protection Act ("VWPA") which govern in this case, 18 U.S.C. § 3579(a)(1) (repealed)[4], the court is authorized to order "that the defendant make restitution to any victim of [a Title 18] offense." The Act further provides that a restitution order may require a defendant who has committed an offense which results "in damage to or loss or destruction of property of a victim of the offense" to either return the property to its owner or reimburse the owner for the loss or damage. *Id.* § 3579(b)(1).

The courts appear to agree that when the government is the unwitting victim of a defendant's misdeeds, restitution may be ordered. *See, e.g., United States v. Hand*, 863 F.2d 1100 (3d Cir.1988) (defendant ordered to reimburse government for the expense of prosecution which resulted in mistrial due to her improper contact as a juror with the defendant in that case); *United States v. Ruffen*, 780 F.2d 1493, 1496 (9th Cir.) (defendant who caused improper payments of Aid to Families with Dependent Children benefits to individuals who would in turn kick back most of the money to him ordered to pay restitution to the govern-

---

**3.** In response to this argument, the government has submitted the affidavit of James S. Dorger, Jr., an FBI Special Agent who was intimately involved in the government's investigation of this case. In that affidavit, Dorger recounts the circumstances surrounding each of the three bribes paid to Finley with the assistance of the government's informant, Michael Burnett. Dorger indicates that in each instance, the FBI either fronted the money for the bribe or sup-

plied the money later as reimbursement. For purposes of Finley's request to vacate the restitution order, the Court assumes Dorger's account of the facts to be correct and that the FBI supplied the entire $25,000 in bribes Finley accepted.

**4.** This provision is now codified at 18 U.S.C. § 3663.

ment), *cert. denied,* 479 U.S. 963, 107 S.Ct. 462, 93 L.Ed.2d 407 (1986). However, in this case, the government was not duped by Finley. Instead, it purposely supplied the funds used to pay Finley in the hopes of catching him in the act of accepting bribes. Consequently, Finley argues, the government suffered no real loss which is compensable through restitution.

*United States v. Dougherty,* 810 F.2d 763 (8th Cir.1987), indicates that the government is entitled to restitution even if it purposely relinquished money or property to the defendant in an effort to catch him at foul play. The defendant in *Dougherty* was found guilty of unlawfully acquiring food stamps. He was arrested after he purchased $950 worth of stamps for $480 from an undercover agent. At sentencing, the district court ordered the defendant to pay restitution in the amount of the $470, the "discount" he had received when he had purchased the stamps. On appeal, he argued that the government had suffered no loss because its own agent had sold the stamps to him at half price. The Eighth Circuit disagreed:

> The evidence in this case established that Dougherty unlawfully acquired $950 in food stamps in exchange for $480 in cash.... In effect, there was a loss to the United States Department of Agriculture in the amount of $470. As a result, the United States, as dispenser of the food stamps, would be the aggrieved party for purposes of restitution under 18 U.S.C. § 3651. We conclude, therefore, that the district court properly awarded restitution to the United States.

810 F.2d at 773.

The Ninth Circuit, however, has taken a contrary view. In *United States v. Salcedo–Lopez,* 907 F.2d 97 (9th Cir.1990), the defendant was convicted on charges of transferring false identification documents. He was exposed by a confidential informant who had paid the defendant a total of $340 for three sets of forged papers with money supplied by the government. The district court ordered the defendant to pay restitution to the government in this amount. The court of appeals reversed,

holding that in these circumstances the government had not experienced a loss cognizable for the purpose of restitution under the VWPA:

> The government's confidential informant paid Salcedo in order to obtain evidence of Salcedo's criminal activity. The government did not "lose" money as a direct result of Salcedo's activities; it spent money to investigate those activities. The government's payments to Salcedo are no more directly related to the crime than any payments the government may have made to the informant. These costs are "too remote to form the basis for restitution."
>
> For similar reasons, the government is not a victim under the Act. Salcedo did not defraud the government. The government wanted false identification papers as evidence of criminal activity and obtained them; the government got what it wanted.

907 F.2d at 99 (citation and footnote omitted). The court acknowledged the appeal of the government's contention that the defendant should not be permitted to profit from his crime. *Id.* However, the court reasoned that this was a policy argument more properly addressed to Congress. *Id.* In addition, it observed that the primary purpose of the VWPA was not to punish the criminal but to compensate the victim. *Id.* Thus, the court concluded that when the government is not truly the victim of the defendant's crime, it would have to resort to other means in order to strip defendant of his profit. *Id.*

This Court finds the reasoning of *Salcedo–Lopez* persuasive. In this case, Finley did not defraud the government of the money he accepted in bribes. The government was aware that the bribes were being paid and, assuming the truth of the government's representations, willingly supplied the money for those bribes. In this circumstance, the government is not a "victim" whose "loss" was one Congress meant to be remedied through restitution. Rather, the amounts which the government has fronted for bribes should be considered of a kind with the other costs the government incurs in an undercover investigation, in-

cluding the accommodations and living expenses provided to undercover informants, the costs of covert electronic monitoring, and the salaries of government investigators assigned to the investigation. Without question, a defendant should not be allowed to profit fortuitously from the fact that he pocketed money passed to him in a controlled transaction. Yet, as the court pointed out in *Salcedo–Lopez,* other avenues to disgorgement remain open to the government. 907 F.2d at 99. Fines are routinely available as a means to eliminate any profit the defendant may have reaped from his wrongdoing[5], and because fines are paid to the government, they effectively serve the same end as an order of restitution to the government would. *See* 18 U.S.C. § 3622 (repealed; applicable to offenses committed prior to Nov. 1, 1987); § 3572(a)(3), (4), and (5) (in determining whether to impose fine and the proper amount, district court must consider the pecuniary loss inflicted upon others as a result of the offense, any restitution imposed, and "the need to deprive the defendant of illegally obtained gains from the offense"). In this case, the Court imposed a fine of $50,000 upon Finley, twice the amount of the bribes he had accepted. *See* 18 U.S.C. § 3571(d). This amount was more than adequate to meet the government's interest in securing compensation for the money it supplied in bribes and to render Finley's criminal acts monetarily profitless for him.

## III. CONCLUSION

For the reasons set forth above, defendant Morgan Finley's motion for reduction and correction of his sentence pursuant to former Fed.R.Crim.P. 35 is granted in part and denied in part.

---

5. In this case, Finley was convicted pursuant to 18 U.S.C. §§ 1951, 1952(a)(3), and 1962. In accordance with the provisions of 18 U.S.C. § 3571(b)(3), fines of up to $250,000 were available for each count on which he was convicted.