UNITED STATES of America, Plaintiff,

v.

Kippard Randall GIBSON, Defendant.

No. CR 94–4016.

United States District Court,
N.D. Iowa,
Western Division.

Jan. 23, 1995.

Assistant U.S. Atty. Timothy T. Jarman, Sioux City, IA, for the U.S.

Peter E. Van Etten, Sioux City, IA, for defendant Kippard Randall Gibson.

## ORDER

BENNETT, District Judge.

In this federal criminal case, the defendant pleaded guilty to three counts of an indictment charging him with distribution of methamphetamine. The indictments followed controlled buys of methamphetamine from the defendant by a confidential informant. At sentencing, the government sought restitution of the "buy money" used by the confidential informant to purchase the methamphetamine from the defendant. Restitution of "buy money" is an issue that surprisingly has been rather infrequently litigated. The court incorporated in its sentencing judgment this written ruling, which details its reasons for denying restitution of "buy money" in this case.

### I. BACKGROUND

On three occasions during early November, 1993, a confidential informant equipped with a wireless transmitter made controlled buys of methamphetamine from defendant Kippard Randall Gibson, once at Gibson's residence in Sioux City, Iowa, and on the other two occasions at other locations in Sioux City, Iowa. The controlled buys were in the amounts of $260, $500, and $1,250, or a total of $2,010.[1] DCI Laboratory testing confirmed the substance purchased in each case to be d-methamphetamine, with the following net mixture weights and "actual" weights based on purity: 3.62 grams (.94 "actual"); 7.05 grams (1.69 "actual"); and 21.18 grams (4.40 "actual").

On May 25, 1994, a Northern District of Iowa Grand Jury returned an indictment against Gibson charging him with three counts of distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). Each count carried a possible maximum sentence of 20 years and fine of $1,000,000.00. Gibson was arraigned on June 14, 1994, and was released on an unsecured bond of $5,000. Gibson was cooperative during the period of his pretrial supervision, and ultimately pleaded guilty to all three counts of the indictment

on September 28, 1994. Sentencing took place on January 23, 1995. At the sentencing hearing, the United States was represented by Timothy T. Jarman, Assistant U.S. Attorney. Defendant was represented by counsel Peter E. Van Etten of Sioux City, Iowa.

At the sentencing hearing, the government sought restitution of the "buy money" used by the confidential informant to purchase methamphetamine from Gibson in order to establish the necessary evidence for Gibson's indictment. In this ruling, to be attached to the judgment in this criminal case, the court details its reasons for denying the government's request for restitution of the "buy money" in this case.

### II. LEGAL ANALYSIS

#### A. Introduction

■ Relatively few decisions address the specific questions presented here concerning whether the court in sentencing a criminal defendant may order restitution of "buy money" used by undercover agents or confidential informants to purchase illegal drugs or other contraband from the defendant in order to establish evidence leading to the indictment of the defendant. The Eighth Circuit Court of Appeals has not yet had the opportunity to address this question, but has not left this court wholly without guidance. The Eighth Circuit Court of Appeals has observed that

> [u]nder the Sentencing Reform Act of 1984, Pub.L. No. 98–473, Title II, § 212(a)(2), 98 Stat. 1837, 1991, 1999 (codified, as amended, at 18 U.S.C. §§ 3556 (authorizing restitution generally), 3583(d) (restitution as a condition of supervised release)), sentencing courts have broad discretion to order restitution. *E.g., United States v. Mitchell,* 893 F.2d 935, 936 (8th Cir.1990); *accord United States v. Teehee,* 893 F.2d 271, 273 (10th Cir.1990); *United States v. Bruchey,* 810 F.2d 456, 458 (4th Cir.1987) (pre-Guidelines). However, this

---

**1.** In addition, the confidential informant made "buys" from Gibson in the amount of $100, and $450, but those buys took place in North Sioux City, South Dakota, and are not part of the indictment. If all five "buys" are totalled, the amount of "buy money" expended by the government in its investigation of Gibson was $2,560.

discretion is limited by the Victim and Witness Protection Act of 1982 (VWPA), Pub.L. No. 97–291, § 5, 96 Stat. 1248, 1253 (codified, as amended, at 18 U.S.C.A. § 3663) (West 1985 & Supp.1990). Title 18 U.S.C.A. § 3663(a) (West Supp.1990) (emphasis added) provides that "[t]he court, when sentencing a defendant convicted of an offense under [title 18 and designated subdivisions of 49 U.S.C. § 1472], *may* order, in addition to or, in the case of a misdemeanor, in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of such offense."

*United States v. Owens*, 901 F.2d 1457, 1458 (8th Cir.1990). Under the Victim and Witness Protection Act, 18 U.S.C. §§ 3663–3664

**2.** Title 18 U.S.C. § 3664(a) provides that

> [t]he court, in determining whether to order restitution under section 3663 of this title and the amount of such restitution, shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

**3.** "A district court may, and in most cases is required by the Sentencing Guidelines to, impose a term of supervised release to be served after imprisonment as a part of a federal defendant's sentence." *United States v. Felix*, 994 F.2d 550, 551 (8th Cir.1993) (citing 18 U.S.C. § 3583(a); U.S.S.G. § 5D1.1). If the court imposes a term of supervised release, "[t]he court shall order, as an explicit condition of supervised release, that the defendant not commit another Federal, State, or local crime during the term of supervision." 18 U.S.C. § 3583(d); *see also* U.S.S.G. § 5D1.3(a). The statute continues, in pertinent part, as follows:

> The court may order, as a further condition of supervised release, to the extent that such condition—
> (1) is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);
> (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and
> (3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a);
> any condition set forth as a discretionary condition of probation in section 3563(b)(1) through (b)(10) and (b)(12) through (b)(20), and any other condition it considers to be appropriate....

(VWPA), the indigency of the defendant does not bar a restitution order, but 18 U.S.C. § 3664(a)[2] provides for consideration of the defendant's financial condition in determining the amount and appropriateness of restitution. *Id.* at 1459. Thus, the Eighth Circuit Court of Appeals "would encourage sentencing courts, when ordering restitution under the VWPA, to make specific findings of fact about the defendant's financial resources, financial needs and earning ability and the defendant's financial obligations to his or her dependents, if any," in order to facilitate effective appellate review of restitution orders. *Id.*

When restitution is ordered as a condition of supervised release,[3] however, it

18 U.S.C. § 3583(d). The conditions identified in the cited subsections of § 3553 are the following:

> (a)(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner ...

18 U.S.C. § 3553(a). These factors are thus considered in sentencing, probation, and supervised release. *United States v. Stoural*, 990 F.2d 372, 373 (8th Cir.1993) (factors in § 3553(a) for sentencing are "virtually the same provisions" as in § 3563(b) for probation, and are incorporated in supervised release provisions of § 3583(d)). The discretionary conditions of supervised release, drawn from 18 U.S.C. § 3563(b) include: support of dependents, (b)(1); payment of fines (b)(2); restitution, (b)(3); notice to victims, (b)(4); employment, (b)(5); refraining from specified occupations, (b)(6); refrain from frequenting specified kinds of places or associating with specified persons, (b)(7); refrain from use of alcohol or other drugs, (b)(8); refrain from use of a firearm, (b)(9); undergo medical, psychiatric, or psychological treatment, (b)(10); reside or participate in a community corrections facility, (b)(12); community service, (b)(13); reside or refrain from residing in specified places, (b)(14); remain within the jurisdiction of the court, (b)(15); report to a probation officer, (b)(16); permit a probation officer to visit, (b)(17); answer inquiries from a probation officer, (b)(18); notify a probation officer if arrested, (b)(19); remain at his or her place of residence when not working, (b)(20). The terms and conditions of

is not subject to the restriction in the VWPA, 18 U.S.C. § 3663(a), making restitution available only for offenses under title 18 and certain offenses under title 49. *United States v. West*, 942 F.2d 528, 532 (8th Cir. 1991). Rather, supervised release is governed by 18 U.S.C. § 3583, and

> [s]ection 3583(d) permits the court to order restitution as provided by § 3563(b)(3), which in turn incorporates sections 3663–64, but *without the limitations of section 3663(a)*.

*Id.* (emphasis in the original). The Eighth Circuit Court of Appeals therefore concluded that the court ordering restitution as a condition of supervised release must still consider the factors identified in § 3664, which include the defendant's financial condition. *Id.* at 532–33. In light of these principles, the court turns to consideration of the specific questions presented here: 1) whether the court may order restitution of "buy money" pursuant to the VWPA, a question other courts have answered in the negative, and 2) whether the court may order restitution of "buy money" as a condition of supervised release, a question on which courts have split. The court concludes that even if the answer to both questions is yes, the court will not order restitution in this case.

### B. Restitution Of "Buy Money" Under The VWPA

Although few courts have addressed the issue, these courts have uniformly held that restitution of "buy money" may not be ordered pursuant to the VWPA in sentencing a criminal defendant. Recognizing that "[a]ny loss for which restitution is ordered must result directly from the defendant's offense," the Ninth Circuit Court of Appeals concluded

that "[t]he costs of investigating and prosecuting an offense are not direct losses for which restitution may be ordered." *United States v. Salcedo–Lopez*, 907 F.2d 97, 98 (9th Cir.1990) (citing, *inter alia*, *United States v. Kenney*, 789 F.2d 783, 784 (9th Cir.1986)). Thus, the court concluded that the United States did not "lose" any "buy money" used to obtain evidence of criminal activity, nor was it a "victim" as required for restitution under the VWPA:

> The government's confidential informant paid Salcedo in order to obtain evidence of Salcedo's criminal activity. The government did not "lose" money as a direct result of Salcedo's activities; it spent money to investigate those activities. The government's payments to Salcedo are no more directly related to the crime than any payments the government may have made to the informant. These costs are "too remote to form the basis for restitution." *Kenney*, 789 F.2d at 784 (quotation omitted).

> For similar reasons, the government is not a victim under the Act. Salcedo did not defraud the government. The government wanted false identification papers as evidence of criminal activity and obtained them; the government got what it paid for.

*Id.* More recent cases follow the Ninth Circuit's reasoning in *Salcedo–Lopez* that the government is not a "victim" as far as loss of "buy money" goes.

In *United States v. Gibbens*, 25 F.3d 28 (1st Cir.1994), the First Circuit Court of Appeals also concluded that the government is not a "victim" within the purview of the VWPA, and, thus, is not entitled to restitution, when it "provokes the commission of a

---

supervised release are also stated in the United States Sentencing Guidelines, U.S.S.G. § 5D1.1 (imposition of a term of supervised release), § 5D1.2 (term of supervised release), and § 5D1.3 (conditions of supervised release). As long as the terms of supervised release comply with the standards of U.S.S.G. § 5D1.3 and 18 U.S.C. § 3583(d), the sentencing judge "is given wide discretion in imposing terms of supervised release." *United States v. Prendergast*, 979 F.2d 1289, 1292 (8th Cir.1992). If restitution is ordered as a condition of supervised release, it must be ordered at the time the defendant is sentenced, and may not be left open to an uncer-

tain date. *Id.* at 1293 (citing *United States v. Sasnett*, 925 F.2d 392, 399–400 (11th Cir.1991), and 18 U.S.C. § 3663(a)(1)).

Section 3583(e)(3) provides that upon finding by a preponderance of the evidence that a person has violated a condition of supervised release and after considering certain factors set forth in section 3553, the court may revoke supervised release and require the person to serve in prison all or part of the term of supervised release without credit for time previously served on post-release supervision, except that the "person ... may not be required to serve more than 3 years in prison." 18 U.S.C. § 3583(e)(3).

crime that, by design, directly results in depletion of public coffers." 25 F.3d at 29, 32–35. In *Gibbens,* the defendant had been approached by a government agent with whom he entered into a series of purchases of food stamps at a deep discount, which the defendant then resold at a substantial profit. *Id.* at 29–30. The government sought restitution of the difference between the aggregate face-value of the food stamps handled by the defendant and the amount the defendant paid to acquire those stamps on the black market from the government agent. *Id.* at 30. The court examined the text of the VWPA, and concluded that the government had not sustained a passive loss, but had made voluntary outlays for the procurement of evidence. *Id.* at 33. The court placed particular emphasis on the fact that "the government instigated the particular incidents for which it now claims the right of restitution—indeed, had there been no official participation, the claimed losses would not have eventuated." *Id.* at 33. The court concluded that in light of the statutory language and legislative history of the VWPA, and the plain meaning of the word "victim" chosen by Congress, "calling the organization that sets up a sting and carries it out a victim is like calling the rabbit who lurks in Houdini's hat a magician." *Id.* at 34. The court also concluded that, when all else fails, the court should take recourse to the "rule of lenity" to hold that ambiguities in a statute should be construed favorably to a criminal defendant. *Id.* at 35. Thus,

> [w]e hold as follows: a government agency that has lost money as a consequence of a crime that it actively provoked in the course of carrying out an investigation may not recoup that money through a restitution order imposed under the VWPA.

*Id.* at 35.

A decision of the Sixth Circuit Court of Appeals is in a similar vein. In *United States v. Meacham,* 27 F.3d 214 (6th Cir. 1994), that court noted that "[t]he [VWPA] aims to protect victims, not to safeguard the government's financial interest in funds used as bait to apprehend offenders." *Meacham,* 27 F.3d at 218 (citing *Salcedo–Lopez,* 907 F.2d at 99, and S.Rep. No. 97–532, 97th

Cong., 2d Sess. at 30, reprinted in 1982 U.S.C.C.A.N. 2515, 2536). Accordingly, the Sixth Circuit had recognized in a prior decision that " 'restitution may not be awarded under the VWPA for investigation or prosecution costs incurred in the offense of conviction.' " *Id.* (citing *Ratliff v. United States,* 999 F.2d 1023, 1026 (6th Cir.1993)). The court noted that in *Gall v. United States,* 21 F.3d 107, 111–12 (6th Cir.1994), a decision discussed further below, the court had concluded that "the government is not entitled to recoup drug 'buy money' from a defendant." *Id.* The court reaffirmed this conclusion, and broadened it, stating that

> the Act does not authorize a district court to order restitution for the government's costs of purchasing contraband while investigating a crime, *even if the defendant explicitly agreed to such an order in a plea agreement.*

*Id.* at 219 (emphasis added). The court founded this conclusion on the lack of any statutory authority for restitution of such investigative costs. *Id.* Finally, the court concluded that even if there were authority for ordering restitution, to do so in that case would be improper because the district court had "utterly failed to consider the requisite factors" of defendant's financial condition identified in 18 U.S.C. § 3664(a). *Id.*

This court concludes that it need not reach the merits of these decisions rejecting restitution of "buy money" under the VWPA, because in the present case, Gibson has not been convicted of an offense to which the VWPA pertains: Gibson was indicted and pleaded guilty to violations of title 21, not title 18 or the limited provisions of title 49 to which the VWPA pertains. *Owens,* 901 F.2d at 1458; *see also United States v. Stout,* 32 F.3d 901, 905 (5th Cir.1994) (separate restitution order not available for violation of title 26; only for violation of title 18 or title 49, under 18 U.S.C. § 3663(a)(1), citing *United States v. Reese,* 998 F.2d 1275, 1282 (5th Cir.1993)). Even if it were able to order restitution in sentencing pursuant to the VWPA, the court concludes that application of the factors identified in § 3664(a) would require it to deny the government's request for restitution of "buy money." The court

will examine the § 3664(a) factors and their application to this case in more detail below.

## C. Restitution Of "Buy Money" As A Condition Of Supervised Release

Failing the availability of restitution of "buy money" pursuant to the VWPA for the violations of title 21 present in this case, the government seeks restitution as a condition of supervised release. The court in *Gibbens* recognized that there was a split in authority as to whether or not "buy money" may be recovered in restitution as a condition of supervised release. *Gibbens,* 25 F.3d at 36 n. 9 (comparing *United States v. Daddato,* 996 F.2d 903, 906 (7th Cir.1993), with *Gall v. United States,* 21 F.3d 107, 111 (6th Cir. 1993)).[4] The court therefore turns to the cases considering restitution of "buy money" as a condition of supervised release rather than under the VWPA.

In *United States v. Daddato,* 996 F.2d 903, 904–05 (7th Cir.1993), the Seventh Circuit Court of Appeals held restitution of "buy money" could be ordered as a condition of supervised release pursuant to 18 U.S.C. § 3563(b), because it resembled community service as much as it resembled classic restitution. The court found authority for this decision in the list of discretionary conditions of probation found in 18 U.S.C. § 3583, which included "any other condition [the court] considers to be appropriate." *Id.* at 904. The court considered that "the analogy to community service [is] compelling; the defendant is being required to contribute to a community service, namely criminal investigation." *Id.* at 905. The court also addressed the question of whether the government should receive restitution of "buy money" because it had been used to investigate crime, concluding that

> [o]n the one hand, it seems unrealistic to describe the defendant as having wrongfully taken money eagerly tendered to him so that he could incriminate himself. On the other hand, it was money that he obtained through criminal activity and therefore had

no right to keep. No matter. The list in section 3563(b) is not limited to restitution, or even to conditions that resemble restitution (which this, at the very least, does); it is enough that the order to repay the buy money is of the same general kind as the items in the list, and it is.

*Daddato,* 996 F.2d at 905.

The reasoning of *Daddato* was rejected by the Sixth Circuit Court of Appeals in *Gall v. United States,* 21 F.3d 107 (6th Cir.1994). The court noted that in the context of conditions of supervised release,

> 18 U.S.C. § 3583(d) permits a sentencing court to order '. . . any condition set forth as a discretionary condition of probation in section 3563(b)(1) through (b)(10) and (b)(12) through (b)(20), and any other condition it considers appropriate.' 18 U.S.C. § 3563(b)(3) permits a sentencing court to order a defendant specifically to '. . . make restitution to a victim of the offense under sections 3663 and 3664 (but not subject to the limits of § 3663(a)) . . .' as a special condition of probation. As previously noted, 18 U.S.C. § 3663 and § 3664 codify the VWPA. The limitation language of § 3663(a), mandates the application of the VWPA only to offenses violating Title 18 or certain subsections of § 902 of the Federal Aviation Act of 1958. 18 U.S.C. § 3563(b)(3), the probation provision cited by the supervised release statute, however, expressly negates this limitation where restitution is ordered as a condition of probation or supervised release. Thus, the district court, in the case at bar, had the authority to order restitution as a condition of supervised release following a 21 U.S.C. § 841(a)(1) conviction.

*Id.* at 109. However, the court concluded that application of the restitution provisions of the VWPA to conditions of supervised release required limitation of restitution to "losses arising from offenses of conviction." *Id.* (citing *Hughey v. United States,* 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990)).

---

4. Although not involving restitution of "buy money," but restitution of back taxes, in *United States v. Stout,* 32 F.3d 901, 904 (5th Cir.1994), the court rejected imposition of restitution as a condition of supervised release, not on the ground that it was not permitted by law, but on the ground that it had been imposed pursuant to a plea agreement which did not expressly contain that requirement.

The court then reasoned that the district court had specifically concluded that the government was not a "victim" of the defendant's criminal acts, and therefore had no such "losses," but rather had made voluntary outlay of investigative expenditures. *Id.* at 111.[5] In a concurring opinion, Circuit Judge Nathaniel R. Jones specifically rejected the *Daddato* court's focus on the catch-all phrase in § 3583(d) allowing imposition of "any other condition [the court] considers to be appropriate" without considering the limitations placed on that phrase in subsequent subsections of the statute, which the concurring judge identified as conditions appropriate for 1) deterrence, 2) protection of the public, and 3) rehabilitation. *Id.* at 112 (Jones, J., concurring). The concurring opinion therefore "reject[ed] the reasoning of *Daddato*, and emphasize[d] that a trial court can no more order the repayment of the government's buy money under the catch-all phrase of § 3583(d) than it could under the VWPA." *Id.*

▮▮▮ Again, this court finds that it need not consider the merits of the arguments for or against imposing restitution of "buy money" as a condition of supervised release, because the court finds that even if it could, it would not do so in this case. Either under the VWPA or as a condition of supervised release, restitution is to be considered in light of the factors stated in § 3664. *West,* 942 F.2d at 532–33. Those factors are "the amount of loss sustained by any victim as a result of the offense, the financial resources of the defendant, [and] the financial needs and earning ability of the defendant and the defendant's dependents...." 18 U.S.C. § 3664(a); *see also West,* 942 F.2d at 533. Although the court recognizes that there are sound policy reasons for requiring restitution of "buy money," so that defendants do not

retain any moneys or profits gained from their involvement in illegal activity, the court finds that in this case the § 3664(a) factors weigh more strongly in favor of denying restitution than they do in favor of reimbursing the government for costs it incurred voluntarily in the course of investigating criminal activity. The court finds first that the government is not a victim of the offense entitled to restitution under the VWPA. Second, Gibson's financial resources are extremely limited, and the financial needs of his dependents are significant. Finally, Gibson's earning ability is also limited.

Courts have uniformly rejected the notion that the government is a "victim" within the purview of the VWPA, *see Meacham,* 27 F.3d at 218; *Gibbens,* 25 F.3d at 34; *Gall,* 21 F.3d at 111; *Salcedo–Lopez,* 907 F.2d at 98, and even those courts finding that restitution of "buy money" is appropriate do not recognize the government as a "victim" of the illegal activity. *Daddato,* 996 F.2d at 905. Without minimizing the catastrophic effect drug trafficking can cause society generally, the government is not a person directly harmed by Gibson's drug trafficking in this case, 18 U.S.C. § 3663(a)(2), and has not sustained injuries similar to those identified in § 3663(b)(1), (2), and (3), which include destruction of property, bodily injury, and death. Undeniably such injuries to individuals are the result of drug trafficking, but the government is not such an individual. *Meacham,* 27 F.3d at 218 ("[t]he [VWPA] aims to protect victims, not to safeguard the government's financial interest...."). This court takes no position on the wisdom of limiting restitution to claims by "victims" of direct harm, or the wisdom of excluding the government from the list of possible claimants of restitution for harms to society in general when no individual victim is identifiable.

5. The court in *Gall* also noted that the Supreme Court's decision in *Hughey* limited restitution under the VWPA to "losses arising solely from the offense of conviction and not for losses caused by other alleged criminal activities." *Gall,* 21 F.3d at 109 (citing *Hughey,* 495 U.S. at 420–22, 110 S.Ct. at 1985–86). The court in *Gall* concluded that even if the plea agreement entitled the government to restitution for losses arising from mere allegations of crimes of which Gall was not convicted, *Hughey* barred restitution for any amounts beyond those expended for the crimes for which Gall was actually indicted and convicted. *Id.* at 110. Thus, even if the court determined in this case that it could order restitution of the "buy money," it would only be able to order restitution of the "buy money" used in the three buys for which Gibson was indicted. The amount of those buys totals $2,010, rather than the $2,560 for the five buys made by the confidential informant from Gibson.

Rather, the role of the courts, "of course, is as interpreters of the words chosen by Congress, not as policymakers or enlargers of congressional intent." *Gibbens*, 25 F.3d at 33. The words chosen by Congress and the congressional intent identified by the courts do not admit of treating the government as a proxy victim for the harm done to society in general. Incarceration will have to serve as the means for Gibson to pay his debt to society generally and will protect society generally from further injuries as the result of Gibson's drug trafficking.

Gibson's family obligations place a severe strain on his financial resources. Gibson has a very young daughter as the result of his current relationship with the woman he married shortly before sentencing. Gibson also has a daughter by a previous girlfriend on whose behalf Gibson has been ordered to pay child support of $597 a month. Gibson is currently over $20,000 in arrears on that support order.[6] Gibson is not in a position to be subjected to further financial obligations.

The financial resources of Gibson and his family are also limited. Although Gibson's new spouse is working, she does not have sufficient resources to bear the costs of the couple's daughter alone. Even with Gibson contributing to the support of the family, the family still requires food stamp assistance. Gibson's earning capacity is demonstrably modest, and will not be enhanced by incarceration. Gibson graduated from high school, but has no other education or vocational training. His employment history is not suggestive of future increases in his earning capacity. Gibson earns approximately $250 net per month working part-time for his new father-in-law's manufacturing business and at different odd jobs. Gibson has also recently worked as a laborer for a contractor and for a local baking company, but neither position appears to have been full-time or to have offered long-term employment stability.

This court concludes that incarceration alone will be sufficient punishment for a defendant of such limited financial resources and significant financial responsibilities, who has furthermore accepted responsibility for his actions. The court does not believe that, even if it were authorized by §§ 3563 and 3583 and the sections of the VWPA they incorporate, imposition of "any other condition" would be "appropriate," 18 U.S.C. § 3583(d), in this case, particularly in light of the factors identified in 18 U.S.C. § 3664(a), which the court is to consider when ordering restitution either under the VWPA or as a condition of supervised release.

### III. CONCLUSION

The few courts to consider the question have uniformly held that courts may not order restitution of "buy money" under the VWPA. However, there is a split in authority on the question of whether courts may order restitution of "buy money" as a condition of supervised release. The court concludes that even if it were authorized to order restitution of "buy money" in this case, either under the VWPA or as a condition of supervised release, it would not do so. In either situation, the court is required to consider the defendant's financial resources and obligations pursuant to 18 U.S.C. § 3664(a). Consideration of those factors in this case weighs in favor of denying the government's request for restitution. Gibson's financial resources are slim, and his obligations are significant. The court believes that in this case, where the defendant has also accepted responsibility for his wrong-doing, incarceration will serve as sufficient punishment.

**IT IS SO ORDERED.**

---

**6.** In addition, the presentence investigation report indicates that Gibson has two children from a previous marriage, although neither child lives with him and there is no evidence of a support obligation for those children.