UNITED STATES of America,
Plaintiff,

v.

Anthony L. CASON, Defendant.

Criminal Action No. 12–00205–01–CR–W–HFS.

United States District Court,
W.D. Missouri,
Western Division.

Filed June 13, 2014.

Sydney N. Sanders, Justin G. Davids, United States Attorney's Office, Kansas City, MO, for Plaintiff.

Katrina Y. Robertson, Liberty, MO, for Defendant.

## SENTENCING MEMORANDUM

HOWARD F. SACHS, District Judge.

■ At sentencing in this firearm case I imposed, as a condition for supervised release a requirement that defendant "use contraceptives before engaging in sexual activity that may otherwise cause pregnancy unless such use would violate his religious scruples or is expressly rejected by his sexual partner." There was no objection by defense counsel to my use of a considerably limited "safe sex" condition of release and thus no explanation of possible objections. Because this may become a subject of appeal (presumably on a "plain error" claim) it may be helpful to add to the informal explanatory comments I made in a pre-sentencing conference with counsel and in the courtroom.

My first use of a "safe sex" condition was last month, (*United States v. Harris*, Cr. No. 13–00347) when a defendant's lifestyle report in the PSR indicated he had fathered ten illegitimate children with a large number of sex partners. He had offered limited support money and necessarily incomplete nurturing—although it was asserted he was devoted to at least some of the children. Here we have seven such children with five sex partners. The last child was described dismissively as the product of a "one-night encounter." Presumably little or no financial support or paternal nurturing will be tendered.

While I assume a considerable number of sex partners have no fear of unprotected sex I also suppose that many women, including promiscuous women, do want protection against the burden of pregnancy without financial support or paternal nurturing. Unprotected sex often leads to abortion or one-parent families, with extreme challenges, financially and otherwise. To the extent feasible, the period of post-imprisonment supervision offers an opportunity to address an element of a defendant's previous conduct that is seriously harmful to society and to individual women and children. After much experience with this phenomenon, and supposing that the expectation of society would be that the judicial system should do what it can to help, I believe I have authority to act in cases where the PSR shows a high likelihood of continuous harm to society if no controls are tried.

My condition of release does not deal with fathering illegitimate children as such. That is not a social issue on which there is a consensus that would support judicial interference with the mutual choice of individuals. My concern is with situations where a woman seeks sex without risk of pregnancy. She should not be endangered by the irresponsible behavior of convicts who are still under court supervision.

Some years ago Judge Hungate tried to deal with the financial problem presented by abandoned children. As I recognized in the *Harris* case (Doc. 26) the overly broad prohibition on fathering illegitimate children during supervision, unless support payments were current, was reversed by the Circuit. *United States v. Smith*, 972 F.2d 960 (8th Cir.1992).

Judicial authority over conditions of supervised release has been somewhat clarified since that case was decided. I am sure the particular result on appeal would still hold, and I am bound by that ruling. A pertinent subsequent case is *United States v. Camp*, 410 F.3d 1042 (8th Cir. 2005), an appeal from a sentence where Judge Susan Webber Wright required continuing child support financial information as a condition of release in a firearm case. Employment requirements were used and also a prohibition on new lines of credit without approval. The objective during supervision was to improve on defendant's

employment history and his child support record. 410 F.3d at 1044. Noting that defendant "might have to go back to prison if he fails to pay child support," Judge Wright said "That's important to me." *Id.*

 Over objection that the lifestyle conditions were unrelated to the offense being sentenced, the Circuit reviewed other lifestyle issues that can be dealt with in conditions of release, depending upon the defendant's background as disclosed in the PSR. The case-law relies on a "catch-all" authorization for creative conditions of release, supplementing specific topics that may be dealt with. *United States v. Anderson,* 583 F.3d 504, 508–09 (7th Cir. 2009); *United States v. Rick,* 75 Fed.Appx. 546 (8th Cir.2003) (unpublished). *See* 18 U.S.C. § 3583(d) and discussion in *United States v. Gibson,* 873 F.Supp. 1339, 1342, 1345–46 (N.D.Iowa 1995). Caution must be taken not to infringe on individual rights inappropriately. Sentencing judges must also confine the objective to problems evidenced by the record, including supplying "correctional treatment" in light of the "history and characteristics of the defendant." 18 U.S.C. § 3553(a).[1]

It seems clear that a defendant's imposition of unprotected sex on a woman who prefers protection is little short of rape, and can actually constitute rape in circumstances where there may be an argument over protection. The harm from an unwanted pregnancy seems comparable to, or greater than, the harm of "statutory rape," especially when a relatively mature teenager is factually willing although deemed incompetent to give consent. Although the courts apparently have not previously taken any responsibility in these cases, even though the defendant is supposedly being supervised, I think it timely, in extreme cases like this one and *Harris,* to condition release in the limited fashion as I have done.

Whether my condition is too intrusive, as Judge Hungate's was deemed to be, can be reviewed by an appellate court. In view of the extraordinary family harm from judicial inattention during the limited period when supervision is authorized, I believe use of a special condition is well justified. As in the *Smith* case, enforcement would be a problem, but that is true of many conditions routinely imposed. An unwanted pregnancy could disclose a violation. The existence of the rule, and the potential for punishment for violation, could be a useful deterrent to misconduct.

Summarily, therefore, these explanations may be useful.[2]

---

**1.** This includes, for example, requiring periods of community confinement for rehabilitative purposes. *United States v. Bahe,* 201 F.3d 1124, 1134–35 (9th Cir.2000). That is a good deal more restrictive than the condition imposed here. It is often used by the Probation Office for individuals who show a serious need for a better structured lifestyle and self-discipline, particularly where lack of discipline may harm members of the public.

**2.** I will not elaborate on the exemption given for defendants having religious scruples against use of contraceptives. My supposition is that, although of great concern to some religions, this exemption is not likely to be significantly invoked by defendants under supervision.