**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**James DADDATO, Defendant–Appellant.**

**No. 92–3750.**

United States Court of Appeals,
Seventh Circuit.

Argued April 9, 1993.

Decided June 17, 1993.

Matthew L. Jacobs, Asst. U.S. Atty., Lynne M. Solien (argued), Milwaukee, WI, for plaintiff-appellee.

Laurence M. Moon, Whitefish Bay, WI (argued), for defendant-appellant.

Before BAUER, Chief Judge, and POSNER and ROVNER, Circuit Judges.

POSNER, Circuit Judge.

This appeal presents a question on which there are no reported cases: whether a judge may impose a condition in the nature of restitution on a sentence of supervised release, even if the Victim and Witness Protection Act of 1982, 18 U.S.C. §§ 3663–64, would not authorize the type of restitution ordered for the defendant's crime.

Pursuant to his plea of guilty, James Daddato was convicted of the federal crime of selling hallucinogenic mushrooms and sentenced to 16 months in prison to be followed by three years of supervised release. His appeal challenges one of the conditions of supervised release: that he repay the $3,650 that he received from law enforcement officers in payment for mushrooms that they bought from him in order to obtain conclusive evidence of his guilt. The statute governing supervised release empowers the sentencing judge to impose as a condition of such release any condition authorized as a discretionary condition of probation plus "any other condition it considers to be appropriate." 18 U.S.C. § 3583(d). Obviously the language is broad enough to encompass the requirement that the defendant make good the government's "buy money"; nor could the imposition of such a requirement be thought an abuse of discretion—it merely asks the defendant (if he is financially able, once his release from prison enables him to obtain a paying job) to make good the expense to which he put the government by violating the laws that prohibit trafficking in a selected subset of mind-altering drugs.

The defendant appeals to the interpretive principle of "eiusdem [or ejusdem] generis" ("of the same kind"): words or terms in a list are presumed to be comparable. *Norfolk & Western Ry. v. American Train Dispatchers Ass'n,* 499 U.S. 117, 111 S.Ct. 1156, 1163, 113 L.Ed.2d 95 (1991). This is one of the much-criticized "canons of construction" that has, however, a kernel of common sense. A list of like items creates for the reader a context which leads him to expect any ambiguous or catch-all term in the list to have a generic resemblance to the other terms. But that cannot help the defendant here. The probation statute to which the provision on supervised release that we quoted refers lists 21 specific conditions, 18 U.S.C. § 3563(b), one of which is paying restitution and another of which is doing community service. 18 U.S.C. §§ 3563(b)(3), (13). Both resemble the condition in this

case. An order to do community service compels the donation of a defendant's valuable labor services for the benefit of the community but not necessarily for the benefit of the victims of his crime—and there may be none. An order to repay the government's "buy money" is similar in requiring the defendant to convey something of value to the community rather than to his victims (if any there be) specifically. *State v. Connelly*, 143 Wis.2d 500, 421 N.W.2d 859 (App. 1988). We need not determine whether such an order is also classic "restitution," which usually refers either to the disgorgement of the defendant's profits from a wrongful act (here the disgorgement ordered is of gross revenue, the sale price, rather than profits) or to the return of something which the defendant has wrongfully taken (not a completely apt description of drug buy money). *United States v. Fountain*, 768 F.2d 790, 800–801 (7th Cir.), modified on other grounds, 777 F.2d 345 (7th Cir.1985) (per curiam); *Gilpin v. American Federation of State, County & Municipal Employees*, 875 F.2d 1310, 1314 (7th Cir.1989). On the one hand, it seems unrealistic to describe the defendant as having wrongfully taken money eagerly tendered to him so that he could incriminate himself. On the other hand, it was money that he obtained through criminal activity and therefore had no right to keep. No matter. The list in section 3563(b) is not limited to restitution, or even to conditions that resemble restitution (which this, at the very least, does); it is enough that the order to repay the buy money is of the same general kind as the items in the list, and it is.

The defendant points out that the provisions of the Victim and Witness Protection Act of 1982 which authorize the award of restitution in federal criminal cases require that the award be made to the victim of the defendant's crime, 18 U.S.C. § 3663(a)(1), which the government does not and could not claim to be, or at least that it be measured by the victim's loss, § 3664(a), and the government does not contend that any victim of Daddato's classically victimless crime suffered any loss as a result of it. He argues that the Victim and Witness Protection Act was intended to occupy the field of federal criminal restitution. We see no basis for this argument, at least in a case such as this where it is not suggested that by requiring the defendant to repay the "buy money" the judge's order will make it more difficult for the defendant to make restitution to any victims of his crime. Congress did not say in the Victim and Witness Protection Act that it was repealing other provisions of the criminal code that might authorize orders in the nature of restitution, and we cannot think of any reason why it might want to do that, except, as we have just suggested, possibly in the special case in which the government and the victim are arguing over the same pot of gold. As its title suggests, the Act was intended for the protection of witnesses and victims, not for securing the government's undoubted interest in "buy money" used as bait to catch offenders. "Buy money" is best viewed as a cost of investigation. *United States v. Salcedo–Lopez*, 907 F.2d 97, 98 (9th Cir.1990); *State v. Newman*, 132 N.J. 159, 623 A.2d 1355 (N.J.1993); *People v. Evans*, 122 Ill.App.3d 733, 78 Ill.Dec. 50, 55, 461 N.E.2d 634, 639 (1984); *United States v. Finley*, 783 F.Supp. 1123, 1128–29 (N.D.Ill. 1991). These cases (and others that we might cite) hold that this characterization carries an order to repay buy money outside the orbit of "restitution" as the term is used in the Act. But the analogy to community service remains compelling; the defendant is being required to contribute to a community service, namely criminal investigation. And it is at least arguable that the order *does* require a form of restitution, albeit not of the kind envisaged by the Victim and Witness Protection Act.

That Act was narrowly interpreted in *Hughey v. United States*, 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990); and although Congress promptly overruled that decision (in 18 U.S.C. § 3663(a)(3)), who is to say whether it did so because *Hughey* was "wrong" or because Congress decided to change the policy of the statute? *Hughey* held that restitution of gains from related but not charged conduct was not authorized by the Victim and Witness Protection Act. This case is similar. The defendant pleaded guilty to and was convicted of only one count of a three-count indictment each count of

which charged a separate transaction, and the buy money he has been ordered to repay is for the two transactions in the counts that were dismissed and for two additional transactions that never were the subject of charges. But of course he was not sentenced under the Victim and Witness Protection Act (well, he was initially, but the judge realized his mistake and corrected it, imposing the order to repay under the catch-all provision of the supervised-release statute). And how the defendant can benefit from a narrow (as well as superseded) interpretation of that Act baffles us. The more narrowly it is interpreted, the less likely it is to occupy the entire field of restitution-resembling criminal remedies—and here the resemblance may not even be that close, as we have seen, because the "restitution" is not to a victim of the defendant's wrongdoing. Of course, the less like restitution the order is, the less like the restitution subsection of the probation statute it is, and so the greater purchase the defendant has for his alternative ground, that of eiusdem generis. But as we said earlier we think that paying a cost of the government's investigation, an authentic cost of criminal activity though not one borne directly by the victims of that activity, is sufficiently like community service—another device for making the defendant repay his debt to society in full and one listed in the probation statute—to bring it easily within that statute's catch-all provision. For that matter it probably is sufficiently like restitution too, whether or not it should be considered a form of restitution. Section 3583(d), interpreted in light of the principle of eiusdem generis, deals in analogies.

AFFIRMED.