32 F.3d 570
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff/Appellee,
v.
Roy SAUER, Defendant/Appellant.
 No. 94-1652.
 United States Court of Appeals, Seventh Circuit.
 Argued Aug, 3, 1994.
Decided Aug. 12, 1994.
 
 Before POSNER, Chief Judge, and BAUER and KANNE, Circuit Judges.
 ORDER
 Roy Sauer pleaded guilty to possession with intent to distribute cocaine in violation of 21 U.S.C. Sec. 841(a)(1). He was sentenced to 87 months of imprisonment and five years of supervised release, and ordered to pay restitution. Sauer appeals a two level enhancement for obstruction of justice pursuant to U.S.S.G. Sec. 3C1.1 and the order to pay restitution. We affirm.
 
 FACTS
 
 1
 Roy Sauer was arrested on November 29, 1993 as a result of an investigation into his drug trafficking activities. After his arrest he agreed to cooperate with authorities investigating other individuals. On December 1, 1993, at the direction of the authorities, Sauer made a recorded telephone call to Terry Hockensmith, his supplier. Sometime after making the call, Sauer drove to Rockford, Illinois to meet with Hockensmith. Sauer told Hockensmith that their earlier conversation had been recorded by the police and that he had informed the police of Hockensmith's cocaine distribution. Hockensmith gave Sauer $2000 and Sauer fled to Canada with his fiance, Kelly Pearson, and newborn son. Pearson returned to Madison, Wisconsin on December 17, 1993 and was arrested. She then cooperated with law enforcement officers to locate Sauer. Pearson convinced Sauer to pick her up in Grand Forks, North Dakota. When he arrived, he was arrested.
 
 
 2
 Sauer was returned to the Western District of Wisconsin, and thereafter assisted the authorities investigating individuals involved in cocaine trafficking in the Madison area. Sauer pleaded guilty to possession with intent to distribute cocaine. At sentencing, Sauer objected to the Probation Officer's recommendation that his sentence be enhanced two levels for obstruction of justice because he fled to Canada. Further, he objected to the court's order that he pay restitution of $6,047.12 to the Dane County Metro Narcotics Unit and $300 to the Wisconsin State Crime Lab.
 
 DISCUSSION
 
 3
 Sauer's challenges under the Guidelines are subject to a two-tiered review: factual findings are reviewed under the clearly erroneous standard while interpretations of Guidelines receive de novo consideration. See, e.g., United States v. Jones, 983 F.2d 1425, 1429 (7th Cir.1993). As for Sauer's appeal of the obstruction enhancement, other circuits have held that while a district court's determination that a defendant obstructed justice is a factual finding reviewed under the clearly erroneous standard, determining whether flight constitutes obstruction "turns primarily on the legal interpretation of a guideline term" and is reviewed de novo. See, e.g., United States v. Mondello, 927 F.2d 1463, 1465 (9th Cir.1991); United States v. Stroud, 893 F.2d 504, 507 (2d Cir.1990).
 
 
 4
 The decision to order a defendant to pay restitution is within the discretion of the district court, reviewed only for abuse of discretion. See United States v. Dorsey, No. 93-3148, slip op. at 10 (7th Cir. June 17, 1994). However, Sauer questions the district court's power to order the repayment of the costs of his apprehension and return, which would be a legal question we review de novo.
 
 Obstruction of Justice
 
 5
 Sauer argues that the district court erred in enhancing his sentence two levels for obstruction of justice pursuant to U.S.S.G. Sec. 3C1.1. That section provides:
 
 
 6
 If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.
 
 
 7
 U.S.S.G. Sec. 3C1.1. Examples of acts justifying application of this section include "escaping or attempting to escape from custody before trial or sentencing." Id., Application Note 3(e). However, conduct that does not warrant application of the enhancement includes "avoiding or fleeing from arrest." Id., Application Note 4(d); see United States v. White, 903 F.2d 457, 462-63 (7th Cir.1990) (while mere flight does not constitute obstruction, totality of circumstances and conduct of the defendant gave rise to enhancement).
 
 
 8
 Sauer asserts that his activities, i.e., informing Hockensmith of the investigation and fleeing to Canada, did not occur in the course of attempting to avoid detection or responsibility for the offense of conviction. First, Sauer argues that his contact with Hockensmith did not assist him in avoiding detection or responsibility for the offense because he had already admitted his involvement. Second, Sauer claims that fleeing to Canada does not constitute obstruction of justice because he remained there only briefly. He maintains this action falls within Sec. 3C1.1, Application Note 4, which states that avoiding or fleeing from arrest is not obstruction of justice.
 
 
 9
 Contrary to his assertions, the fact that Hockensmith's testimony would not be needed or that Sauer only went to Canada briefly does not preclude a determination that his conduct constituted obstruction of justice. First, the very language of Sec. 3C1.1 applies to this case: "willfully obstructed or impeded ... the administration of justice during the investigation ... of the instant offense." Here, Sauer tipped off one of the subjects of the investigation, thereby impeding it. It also seems clear that Sauer himself was one of the subjects of the investigation, and his flight to Canada impeded that as well.
 
 
 10
 Sauer relies on the fact that his flight occurred after his arrest but before he was indicted, and therefore fleeing to Canada was within his right. See United States v. Sanchez, 928 F.2d 1450 (6th Cir.1991) (defendants' knowledge that co-conspirator was arrested and their subsequent move did not constitute obstruction as they were not obligated to remain). This argument is without merit. After Sauer's arrest, he agreed to cooperate with the investigation of others and the detectives did not detain him. Two days later he made a recorded call to his supplier. With the understanding that he was assisting the authorities in order to receive favorable treatment, he was not free to flee to Canada. Cf. United States v. Perry, 908 F.2d 56 (6th Cir.) (while out on bond, defendant failed to meet with probation officer, and was not apprehended for 8 months), cert. denied, 498 U.S. 1002 (1990).
 
 
 11
 The facts of this case are similar to those of United States v. Vargas, 986 F.2d 35, 42 (2d Cir.), cert. denied sub nom. Campos v. United States, 114 S.Ct. 91 (1993). In Vargas, the defendant had been apprehended and had agreed to cooperate in a controlled delivery to one of his buyers. At the time of the delivery, Vargas attempted to escape and grabbed an agent's gun. In finding the enhancement proper, the court relied on the fact that Vargas was "not merely flee[ing] to avoid capture in the immediate aftermath of the crime," but rather that he was cooperating with agents at the time of his activities of obstruction. Id.; see Mondello, 927 F.2d at 1466 (decided before Application Note 4(d) was added to Guidelines; defendant's flight did not occur in the immediate aftermath of his crime, which took place three weeks before, but qualified for an enhancement).
 
 
 12
 Finally, Sauer argues that his addiction to cocaine precluded his ability to form the requisite specific intent to willfully obstruct justice. The district court found that Sauer "made a willful choice, voluntary choice, and not totally an irrational choice to escape, to leave, to get out of the country before he could be prosecuted, and also tip off the person in Illinois which certainly did impede the investigation of the offense." Sent. Tr. at 26. At sentencing, Sauer offered the testimony of a drug and alcohol counselor who stated that at the time of his arrest Sauer had a severe addiction to cocaine. After his arrest, his use of cocaine ended but he continued to drink alcohol heavily. The counselor stated that Sauer probably would not have the ability to make a rational decision.
 
 
 13
 This is a factual finding reviewed for clear error. We have held that in order to impose a two level increase under Sec. 3C1.1, the court must "find that the acts of the defendant alleged to obstruct or impede justice were done 'willfully' and with specific intent 'to avoid responsibility' for the offense for which he was being tried." United States v. Haddad, 10 F.3d 1252, 1261 (7th Cir.1993); see United States v. Hagen, 913 F.2d 1278, 1285 (7th Cir.1990) (3C1.1 contains a clear mens rea requirement; willfully requires that the defendant consciously acted with the purpose of obstructing justice).
 
 
 14
 It cannot be said that the district court clearly erred in determining that Sauer possessed the requisite intent to obstruct justice. The court had the opportunity to observe the defendant and assess the testimony of the counselor who testified on his behalf. Further, Sauer fled three days after his arrest and one day after his call to Hockensmith, and after he made arrangements to take his fiance and newborn with him, leaving five children behind in the care of others. Sauer's actions support a finding that he willfully fled for the purpose of obstructing justice.
 
 Payment of Restitution
 
 15
 Sauer also argues that the district court erred in ordering him to pay restitution to the government for the costs of his apprehension. The district court stated that "this is a case in which it is appropriate for Mr. Sauer to pay the cost of his apprehension under the unusual circumstances where Sauer was cooperating and then decided to flee. It was reasonably foreseeable to him that it would be necessary for some law enforcement officers to incur expenses, either to travel from North Dakota to Wisconsin and back or to travel from Wisconsin to North Dakota and back." Sentencing Transcript at 37. 18 U.S.C. Sec. 3583(d) provides the conditions of supervised release a court may impose, including a catch-all that authorizes any condition the court "considers to be appropriate." Cf. Hughey v. United States, 495 U.S. 411 (1990) (holding that the Victim and Witness Protection Act limits restitution to compensation for losses arising from the offense of conviction, not losses caused by other alleged criminal activity).
 
 
 16
 Although this court has not addressed this issue, United States v. Daddato, 996 F.2d 903 (7th Cir.1993), provides some guidance. There, we held that the district court was authorized under Sec. 3583 to order the defendant to repay buy money as a condition of supervised release. Looking to the catch-all provision, the court stated "[o]bviously the language is broad enough to encompass the requirement that the defendant make good the government's 'buy money' ... it merely asks the defendant ... to make good the expense to which he put the government by violating the laws that prohibit trafficking in a selected subset of mind-altering drugs." Id. at 904. The court analogized the repayment of buy money to an order to do community service: "the defendant [is required] to convey something of value to the community rather than to his victims (if any there be) specifically." Id. at 905.
 
 
 17
 The instant case is different from Daddato in that Sauer is not being asked to repay money he obtained illegally, but rather to repay the government for having to track him down and bring him back from North Dakota. However, the Daddato court further held that "paying a cost of the government's investigation, an authentic cost of criminal activity though not one borne directly by the victims of that activity, is sufficiently like community service ... to bring it easily within that statute's catch-all provision." Id. at 906. This language leads us to the conclusion that the district court did not err in ordering Sauer to pay the costs of his apprehension and return. But see Gall v. United States, 21 F.3d 107 (6th Cir.1994) (Jones, J. concurring) (suggesting that the Daddato court improperly looked to the catch-all provision, and finding that ordering a defendant to return buy money deprives the defendant of liberty during the period of supervised release).
 
 CONCLUSION
 
 18
 For the reasons stated above, we AFFIRM the district court's judgment.