**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Michael J. BROOKS, Defendant–**
**Appellant.**

No. 96–1323.

United States Court of Appeals,
Seventh Circuit.

Argued April 9, 1997.

Decided June 2, 1997.

David E. Risley, (argued), Office of the United States Attorney, Springfield, IL, for Plaintiff–Appellee.

Robert A. Handelsman, (argued), Chicago, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, and CUMMINGS and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

Michael J. Brooks, who pled guilty to a charge of conspiracy to distribute cocaine, challenges two aspects of his sentence on this appeal. His first claim is that a 1993 state conviction for selling cocaine (in 1991) was not a "prior sentence" for purposes of calcu-

lating his criminal history category under the federal sentencing guidelines. His second claim is that the district judge erred when he ordered Brooks to repay $10,550 the government used to buy cocaine from Brooks and his coconspirators during the course of the conspiracy.

■ Under the guidelines a sentencing judge must increase a defendant's criminal history level for specified prior sentences. U.S.S.G. § 4A1.1. A prior sentence is defined as "any sentence previously imposed ... for conduct not part of the instant offense." U.S.S.G. § 4A1.2(a)(1). Our first issue today is whether the district judge erred in increasing Brooks' criminal history level after he determined that Brooks' prior state felony conviction was not related to the conspiracy charge for which he was being sentenced. We review this finding for clear error.

Brooks sold an ounce of cocaine to an undercover Illinois police officer in January 1991 and was busted for the sale 3 months later. This was not the first time he sold drugs, for he testified later that he started dealing in 1988 or 1989 when he was 16 years old. He was convicted on the state felony drug dealing charge in 1993 and sentenced to serve a term of 4 years. He was supposed to begin serving this sentence on April 30, 1993, but he took a "vacation" (he went to Mississippi) instead and didn't get around to reporting to prison until August 16, 1993. Then, after doing less than 9 months of his 4-year sentence, Brooks was released from custody and put on electronically monitored home confinement. This occurred on April 30, 1994.

The charge in this case to which Brooks pled guilty said the cocaine selling conspiracy existed "from about March 1993 or before, ... through at least October 25, 1994." Brooks argued at his sentencing hearing in this case that his 1991 sale was actually part of the charged conspiracy to which he had pled guilty, so the ounce of cocaine he sold to the Illinois agent should have been added to his "relevant conduct" in determining his base offense level. It should not count, he said, as a prior sentence on the criminal history side of his ledger.

Shoehorning Brooks' 1991 cocaine sale into the "relevant conduct" side of his conspiracy conviction under the guidelines is wonderfully beneficial to him for it is tantamount to tossing a deck chair off the Queen Mary. The small amount of cocaine involved in the sale would have no effect on his base offense level. But treating the 1991 sale and the resulting 1993 conviction as a prior sentence has a wicked result, for Brooks is no longer treated as a first offender, and because the conviction was fresh and he was being monitored at the time, he jumps up to category IV on the criminal history ladder. The district court considered the issue Brooks now raises and concluded that the state conviction was countable as part of Brooks' criminal history. After reviewing the record, we conclude that this finding was far from being clearly erroneous.

Most defendants charged in conspiracy cases argue that the scope of their agreement was more limited than that alleged by the government. But not our Mr. Brooks. It's to his advantage to argue an expansive view of the conspiracy because that might require (if accepted by the court) that he be treated under the guidelines as a first offender instead of a recidivist.

It is true that the record supports a finding that Brooks' distribution of cocaine in January of 1991 was at least the same sort of conduct charged in the indictment in this case. Brooks' cocaine distribution activity, it seems, was continuous from well before 1991 through the time of his arrest in this case, October 1994. In fact, his dealing was interrupted only by the 9 months he spent in prison—it was certainly not interrupted by the time he spent on home confinement because he sold drugs out of his front yard while he was electronically monitored after he got out of the slammer.

We believe the evidence here supports the finding that the January 1991 sale was "not part of the instant offense," and this means Brooks' argument must come up dry. This is so because the 1991 event and the charged conspiracy are easily severable into two distinct offenses. *See United States v. Hopson*, 18 F.3d 465 (7th Cir.1994). For one thing,

the federal conspiracy involved folks—J.W. Pearson and Gregory Scott, to name two—who were not connected in any way with the 1991 sale. For another thing, although the federally charged conspiracy began "about March 1993 or before," none of the overt acts alleged in the indictment were committed within 33 months of January 1991. The sales alleged as overt acts in the indictment—there are 11 of them—began on September 3, 1993, and 8 of them took place after June 21, 1994, when Brooks was out of prison on the state conviction. Brooks' 1991 sale was therefore properly viewed as separate from the charged conspiracy, and thus his 1993 state conviction was countable as a "prior sentence" for criminal history purposes under the guidelines.

■ Brooks' second argument need not detain us, for we would have to overrule our decision in *United States v. Daddato*, 996 F.2d 903 (7th Cir.1993), to grant him relief, and we're not inclined to take that step. In *Daddato*, after noting that an order to repay drug buy money as "restitution" under the Victim and Witness Protection Act of 1982, 18 U.S.C. §§ 3663–64, was not cricket, we found that such an order would nevertheless pass muster as a condition of supervised release. We should change this sensible rule, Brooks suggests, because its reasoning was questioned by a judge on the Sixth Circuit in a concurring opinion in *Gall v. United States*, 21 F.3d 107 (6th Cir.1994). Well, at the risk of sounding overly protective of our prior ruminations on the law, we find the reasoning expressed by the concurring judge to be a bit less than convincing. We stand by *Daddato* as a better interpretation of the law.

AFFIRMED.