In the

# United States Court of Appeals
### For the Seventh Circuit

No. 13-2836

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KEVIN R. WILLIAMS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:12-cr-00248-LA-1 — **Lynn Adelman**, *Judge.*

ARGUED DECEMBER 3, 2013 — DECIDED JANUARY 14, 2014

Before POSNER, MANION, and HAMILTON, *Circuit Judges.*

POSNER, *Circuit Judge.* The question presented by this appeal is whether a judge may, as a condition of supervised release, order the defendant to reimburse "buy money" dispensed by the government (and not recovered by it) in its investigation of the defendant.

The defendant was prosecuted for being a felon in possession of firearms. A confidential informant had bought

three guns from him, for $400 apiece, with money supplied by the government. The purchases provided the essential evidence of the defendant's guilt, although the $1200 that the defendant had received from the confidential informant in payment for the guns—what is called "buy money"—was never recovered.

He pleaded guilty to being a felon in possession and was sentenced to 16 months in prison followed by 24 months of supervised release. As a condition of supervised release he was ordered to repay the buy money to the government at a minimum rate of $50 per month, which would enable him to repay the full $1200 in exactly 24 months. He could if he wanted pay more than $50 per month and so complete repayment of the buy money earlier.

We first upheld an order to repay buy money as a condition of supervised release in *United States v. Daddato*, 996 F.2d 903 (7th Cir. 1993), and have followed *Daddato* in a number of cases, such as *United States v. Anderson*, 583 F.3d 504, 509 (7th Cir. 2009); *United States v. Gibbs*, 578 F.3d 694, 696 (7th Cir. 2009); *United States v. Cook*, 406 F.3d 485, 489 (7th Cir. 2005); and *United States v. Brooks*, 114 F.3d 106, 108 (7th Cir. 1997), never questioning its validity. The other circuits have thus far skirted the issue. The majority opinion in *United States v. Cottman*, 142 F.3d 160, 170 (3d Cir. 1998), holds (correctly as we'll see) that repayment of buy money is not restitution, but suggests that an order to repay is a proper fine; a separate opinion in the case regards, as do we, such an order as a permissible condition of supervised release (which is much the same as a fine equal to the buy money). The concurring opinion in *Gall v. United States*, 21 F.3d 107, 112–13 (6th Cir. 1994), expresses disagreement with *Daddato*

on the ground, which we find puzzling, that the order to repay "deprives the defendant of liberty during the period of supervised release." *Id.* at 113. And *United States v. Gibbens*, 25 F.3d 28, 36 and n. 9 (1st Cir. 1994), notes the conflict between *Daddato* and the concurring opinion in *Gall* but does not take sides.

The defendant asks us to overrule our decisions allowing repayment of buy money to be made a condition of supervised release. He does not challenge any other provision of his sentence.

The Sentencing Reform Act of 1984 replaced federal parole with supervised release; the current provision is 18 U.S.C. § 3583. Both parole and supervised release impose restrictions on defendants after their release from prison. But the restrictions imposed by parole end when the term of imprisonment to which the defendant was sentenced ends; so if he was sentenced to five years in prison and released on parole after three years, the restrictions that parole imposes on him expire after two years. A term of supervised release is specified separately in the sentence; it is not a function of the prison term imposed by the sentence. There are limitations on the length of the term of supervised release, but they are a function of the gravity of the crime. See 18 U.S.C. § 3583(b).

The combined result of subsections (b) (length of supervised release), (c) (factors the judge must consider in deciding on the length and conditions of supervised release), and (d) (mandatory and optional conditions of supervised release) is that an order of supervised release has three key sections, though not necessarily distinguished as such. The first will specify the length of the term of supervised release. The second will list the mandatory conditions of supervised

release, such as that the defendant not commit another crime during the term. And the third will list any additional conditions that the judge deems appropriate, subject to limitations specified in subsection (d). Repayment of buy money is in the third category, as buy money is not mentioned in the statute. The judge imposed it in this case without giving a reason, doubtless because our cases, beginning with *Daddato*, have held it to be an appropriate condition of supervised release.

The defendant challenges the imposition of this condition on several grounds. One is that it doesn't further any legitimate penological goal, specifically rehabilitation, which he stresses—indeed implies is the only goal, citing our decision in *United States v. Goodwin*, 717 F.3d 511 (7th Cir. 2013). But *Goodwin* neither says nor implies any such thing. See *id*. at 521–22. And critically the defendant misses the ambiguity in the term "rehabilitation" (more precisely, "correctional rehabilitation") as used in discussions of criminal punishment. It often has rather utopian overtones—easing the defendant's transition to community life, making him a productive, law-abiding member of society. See Francis T. Cullen, "Rehabilitation: Beyond Nothing Works," 42 *Crime & Justice* 299, 310–14 (2013); Michelle S. Phelps, "Rehabilitation in the Punitive Era: The Gap Between Rhetoric and Reality in U.S. Prison Programs," 45 *Law & Society Rev.* 33, 36 (2011). Both of these articles invoke the "rehabilitative ideal." A more modest conception of rehabilitation, however, is that a defendant is rehabilitated when he ceases committing crimes, at least crimes of the gravity of the crime for which he was convicted, whether or not he becomes a productive member of society. See Andrew von Hirsch, *Doing Justice* 127 (1976). So the question whether requiring a defendant to repay buy money

is rehabilitative merges into the question whether imposing such a requirement is likely to reduce the likelihood of his continuing to commit crimes after he completes his prison term.

So viewed, repayment of buy money resembles payment of a fine. The judge could have imposed a $1200 fine on the defendant in this case—indeed a much larger fine; the statutory maximum fine for his crime was $250,000, 18 U.S.C. § 3571(b)(3), and his guidelines fine range was $3,000 to $30,000, U.S.S.G. § 5E1.2(c)(3). Fines are a favored mode of punishment when there is a realistic expectation that they can be paid, because they can be used to shift the cost of administering punishment from the prison system, and therefore ultimately the taxpayer, to the defendant. To this end the guidelines recommend (though no longer require) making the cost of imprisoning the defendant a component of his fine, as long as he can pay it. See U.S.S.G. § 5E1.2(d)(7). An earlier guidelines provision, upheld in *United States v. Turner*, 998 F.2d 534, 536–37 (7th Cir. 1993), required the imposition of "an additional fine amount that is at least sufficient to pay the costs to the government of any imprisonment, probation, or supervised release ordered." U.S.S.G. § 5E1.2(i). Both fines and imprisonment are rehabilitative in the realistic sense that we have proposed, because they are intended in part to reduce the likelihood that the defendant will recidivate.

Instead of imposing a fine the district court ordered the defendant to repay the $1200 in buy money that the government had used to (lawfully) trap him. The judge declined to impose a fine because of (he said) the defendant's "financial situation." He should have explained why, if the de-

fendant's financial situation precluded a fine, it did not pre-
clude an order to repay buy money. (It might not because,
unlike payment of a fine, the period for repayment of buy
money does not begin until the defendant is released from
prison.) The federal criminal code sets forth detailed condi-
tions for imposing any fine. See 18 U.S.C. § 3572. The judge
didn't mention these. And it's not as if any fine he imposed
would have had to exceed $1200; there is no statutory mini-
mum fine. Nor would a fine necessarily have to be repaid all
at once; like a financial condition of supervised release, it can
be made payable in installments. U.S.S.G. § 5E1.2(f).

But we need to consider whether, even when identical in
amount, a fine and buy money might be thought to have dif-
ferent "rehabilitative" effects. A fine is general; a repayment
could be thought to focus the criminal defendant's mind
more directly on his wrongdoing. The defendant in this case
sold guns illegally, receiving money to which he was not en-
titled—in fact the government's money (though he didn't
know that), squandered by him. Forcing him to repay it may
operate as a sharper reminder of his wrongdoing than a fine
of arbitrary amount.

Maybe this is what the judge had in mind in ordering re-
payment of the buy money instead of a fine, but he did not
say and his silence is one of the grounds on which the de-
fendant asks us to overturn the repayment order. Yet con-
sidering the modesty of the amount to be repaid, the light
prison sentence (16 months) that the judge imposed on a fel-
on in possession who not only possessed guns illegally but
also was an illegal seller of guns, the rehabilitative purpose
that the repayment order served, the fact that the sentencing
guidelines provide that when a defendant can't pay in full

what would otherwise be the appropriate fine "the court shall consider alternative sanctions in lieu of all or a portion of the fine," U.S.S.G. § 5E1.2(e), and this court's repeated approval of such orders, we consider the district judge's lack of explanation a harmless error.

The defendant's next ground for challenging the repayment order is that it is unlawful because it is a form of restitution. The federal criminal code, including the supervised-release statute, defines restitution as payment of losses sustained by victims of crime, see 18 U.S.C. § 3663A(c), and the government is not deemed a victim. *United States v. Cook, supra*, 406 F.3d at 489; *United States v. Cottman, supra*, 142 F.3d at 168–70; *Gall v. United States, supra*, 21 F.3d at 112; *United States v. Salcedo-Lopez*, 907 F.2d 97, 98–99 (9th Cir. 1990) (per curiam). Government employees engaged in law enforcement actually live on crime, much as fishermen live on fish. What is true is that the expense of government is borne ultimately by the taxpayer, and the more crime there is, the greater that expense; and so taxpayers are victims of crime even if they never encounter a criminal. But the requirement of restitution in federal criminal cases is limited to the direct victims of crime, as the cases we've just cited hold, not remote victims such as taxpayers. An order to repay buy money could not be justified as a form of restitution.

But as well-explained by Judge Edmund Ludwig in his separate opinion in the *Cottman* case, 142 F.3d at 170–73, the fact that such an order is not authorized or compelled by the statutory provision governing restitution doesn't mean it can't be made a condition of supervised release. Supervised release is open-ended; anything within reason (as long as it is compliant with the restrictions and cautionary reminders

in 18 U.S.C. § 3583(d), none violated by the repayment order in this case) that serves a penological function is permitted. From the standpoint of specific deterrence (deterring the defendant, as distinct from other potential offenders, from committing crimes after his release from prison), an order to pay that is not authorized by the restitution statute may nevertheless, like a fine, deter him from committing future crimes by increasing the penalty for this crime. That will remind him of one of the costs that he will face should he be convicted of a similar crime in the future. Also like a fine, the order to repay is a payback for a cost that his crime imposed, though not on a direct victim—but still a cost. So close to a fine is the order to repay that the majority opinion in *Cottman* said that "in future cases the district court may consider imposing a fine which is equivalent to the amount of any buy money a defendant has received from the Government." 142 F.3d at 170 n. 14.

We noted in *Daddato* the resemblance of an order to repay buy money not only to restitution but also to an order to perform community service (such as cleaning up a park or effacing graffiti from public buildings or serving soup in a shelter—all for no or nominal pay). Although an order to perform community service is not a mandatory condition of supervision, it is authorized, see 18 U.S.C. §§ 3583(d), 3563(b)(12), and frequently imposed. The sentencing guidelines suggest that it be imposed in lieu of a fine that the defendant would be unable to pay. See U.S.S.G. § 5E1.2(e).

Community service is functionally much like repaying buy money. When done under compulsion it is a form of involuntary servitude and thus a cost to the defendant; it is also a form of payback for his crime. "The offender is to per-

form work that benefits the public: even if the offender is not thereby reformed, the thinking runs, at least the community gains from the work done." von Hirsch, *supra*, at 121. Community service reduces the cost of the defendant's crime to society and at the same time tries to drill into his head the fact that crime does not (at least when the criminal is caught) pay. The defendant's lawyer tells us that community service is "making amends [to] the community he harmed. That's somewhat rehabilitative." True—and repaying buy money is also making amends, in this case to the community that the defendant harmed by selling guns illegally.

The defendant's last and shallowest objection to the repayment order is that the government didn't *have* to buy three guns from him; one buy would have warranted the sentence imposed on him and then the buy money would have been only $400. On this ground he argues that after the first buy the police were *obligated* to end their investigation and arrest him forthwith—an argument rejected in *Hoffa v. United States*, 385 U.S. 293, 309–10 (1966); see also *United States v. Limares*, 269 F.3d 794, 798–99 (7th Cir. 2001) ("agents are not obliged to make arrests as soon as possible; they may continue investigations in order to acquire additional evidence"). It is sensible law enforcement to induce multiple buys, whether of guns or of drugs, as insurance against a glitch that may spoil the prosecution of the first (or in this case the first and second) buy. The first gun might be an obvious fake. Or the confidential informant who was supposed to have bought it might have pocketed the buy money rather than have sold the gun—he might testify at trial that he had sold it, but be tripped up on cross-examination, causing the government's case to collapse. Furthermore, there is a guidelines sentencing enhancement for illegal possession of three

firearms, U.S.S.G. § 2K2.1(b)(1)(A)—and by virtue of the three buys the defendant's guidelines sentence was duly enhanced.

AFFIRMED.