NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0154n.06

Case Nos. 25-5257/5263

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Apr 01, 2026
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| MICHAEL WILLIAMS, | ) ) | |
| Defendant-Appellant. | ) ) ) | OPINION |

Before: STRANCH, READLER, and BLOOMEKATZ, Circuit Judges.

PER CURIAM. Michael Williams violated the terms of his supervised release by committing a new offense. In a single sentencing hearing, the district court revoked his supervised release and imposed consecutive sentences on Williams for the new offense and the supervised release violation. Williams challenges his resulting within-Guidelines sentence for the supervised release violation as procedurally unreasonable, and he argues that the district court did not adequately explain its reasons for imposing consecutive sentences. We disagree and affirm the district court.

I.

Michael Williams has a history of run-ins with the law. Among his past offenses is a federal drug trafficking conviction for possession with intent to distribute at least five grams of crack cocaine. 21 U.S.C. § 841(a)(1), (b)(1)(B). His sentence for that offense included

incarceration and a six-year period of supervised release, a term that commenced in 2019 following his release from prison under the First Step Act. One condition of Williams's supervised release was that he not commit another federal, state, or local crime while on supervision.

Unfortunately, Williams ultimately was unable to honor the conditions of his release. In 2024, officers received information that Williams had been distributing cocaine from his home. After securing a warrant, officers searched the house. There, they discovered powder cocaine, crack cocaine, digital scales, and baggies. Additionally, in a shed behind the home, officers found approximately 300 grams of a cutting agent commonly used to increase the volume of drug products. Following that discovery, Williams remarked to officers, "I'm screwed." No. 25-5257, R. 21, PageID 78–79. He then explained that he had been selling cocaine for about four months, and that everything found during the search was "his responsibility." *Id.* at 78–79.

A grand jury indicted Williams for possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B). Williams later pleaded guilty to a lesser included drug trafficking offense under 21 U.S.C. § 841(a)(1), (b)(1)(C). During Williams's ensuing sentencing hearing, the district court sentenced Williams to 14-months' imprisonment (within the recommended Guidelines range of 8 to 14 months), plus three years of supervised release for this new offense. The district court stated that it "imposed this sentence . . . to impress upon [Williams] the necessity for respect for the law and to provide just punishment for the offense."

Williams's conduct, however, had further ramifications. His new conviction also constituted a Grade A violation of his supervised release term tied to his previous drug trafficking conviction, thereby requiring the district court to revoke Williams's supervised release. U.S. Sent'g Guidelines Manual § 7B1.3(a)(1) (U.S. Sent'g Comm'n 2023). The district court did so at

the same time it sentenced Williams for his new charge, with the district court addressing the sentence for the revocation and the new charge separately.

In announcing the revocation sentence, the district court considered several factors. It explained that, "[w]hen someone is placed on supervised release," the conditions are "tailored to the defendant by the [c]ourt to help the defendant readjust to society so they can lead a law-abiding, fruitful, and productive life." *Id.* at PageID 342. The court noted that, "[w]hen a defendant does not comply with the terms and conditions, then that lets the courts down," and "it violates the trust the [c]ourt placed in the person," which requires the court "to take some action to impress upon the defendant the necessity of obeying the Court's order." *Id.* The court also noted that Williams has a "long history of criminal violations." No. 25-5257, R. 36, PageID 346. Those realities, the court explained, made it imperative to "impress upon [Williams] the necessity of obeying all the terms of his supervised release, not violating the law while he's on supervised release, and doing all that he can to make sure that he becomes [a] law-abiding and productive citizen" going forward. *Id.* at PageID 347. The court remarked that "more" "deterrence" and "respect for the law" "are needed in this case with respect to Mr. Williams." *Id.* at PageID 343. And the court stated that a within-Guidelines revocation sentence was "necessary to reach all of the [§] 3553 goals." *Id.* In the end, the court sentenced Williams to 51-months' imprisonment for violating his previous supervised release terms, to be served consecutively to his sentence for his most recent trafficking conviction. Critical to the court's determination to make the sentences consecutive (rather than concurrent) was "the recommendation of the Sentencing Commission in cases such as this" and the "need for [Williams] to understand the importance of him complying with the law," and to "demonstrate to [Williams] that there is a separate harm that was caused above and beyond the new crime, and that's the violation of the trust that the [c]ourt placed in him." *Id.* at 348.

II.

On appeal, Williams asserts that the revocation of his supervised release was the product of two procedural errors. *Cf.* 18 U.S.C. § 3583(e) (setting out factors that govern supervised release). One, the district court improperly considered retributive factors in revoking Williams's supervised release, in violation of *Esteras v. United States*, 145 S. Ct. 2031 (2025). And two, the court failed to provide proper justifications for why it made Williams's sentence for his new drug trafficking conviction run consecutively to the revocation sentence.

For a sentence to be procedurally reasonable, the district court must properly calculate the Guidelines range, treat the range as advisory, consider the permissible sentencing factors in 18 U.S.C. § 3553(a), refrain from considering impermissible factors, select the sentence based on facts that are not clearly erroneous, and adequately explain why it chose the sentence. *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018); *see also United States v. Adams*, 124 F.4th 432, 438 (6th Cir. 2024) (applying these criteria to a revocation of supervised release sentence). The parties agree that we review this issue for an abuse of discretion. *See Adams*, 124 F.4th at 438; *United States v. King*, 914 F.3d 1021, 1024 (6th Cir. 2019). To that end, a district court abuses its discretion if it selects "a sentence based on clearly erroneous facts[] or fail[s] to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007).

A.1. Section 3583(e) provides that a court may revoke a defendant's supervised release "after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)." 18 U.S.C. § 3583(e). Absent from this list is § 3553(a)(2)(A), which directs courts to consider "the need for the sentence imposed" "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." *Id.*

4

§ 3553(a)(2)(A).  In *Esteras*, the Supreme Court held that a district court, as part of a supervised release revocation hearing, may not consider the "seriousness of the [defendant's original underlying] offense" when imposing a sentence for the supervised release violation because the supervised release statute did not incorporate that § 3553(a) factor.  *See* 145 S. Ct. at 2040 (emphasizing that 18 U.S.C. § 3553(a)(2)(A)—which lists retributive factors of "seriousness of the offense", "respect for the law", and "just punishment for the offense"—is absent in the factors delineated in § 3583(e), the statute governing supervised release).  The Court explained that, "when a defendant violates the conditions of his supervised release, it makes sense that a court must consider the *forward-looking* ends of sentencing (deterrence, incapacitation, and rehabilitation), but may not consider the *backward-looking* purpose of retribution." *Id.* at 2031.

Against this backdrop, Williams does not argue that the district court violated *Esteras* by sentencing him to punish his original offense.  Instead, Williams argues for an extension of *Esteras*, asserting that because supervised release is designed to be forward looking and rehabilitative, any retributive consideration in setting a sentence for a supervised release violation, however framed, is off limits.  In so doing, Williams acknowledges that *Esteras* expressly left open whether 18 U.S.C. § 3583(e) permits a district court to sanction a defendant for failing to obey court-ordered conditions of supervised release as the Guidelines recommend.  *See* Appellant Br. at 21 ("But [*Esteras*] left another question open—can a court impose retribution for the violation itself?"); *see also* 145 S. Ct. at 2040 n.5 ("We take no position on whether" "'sanction[ing] the violator for failing to abide by the conditions of the court-ordered supervision'" "is a permissible consideration." (quoting U.S. Sent'g Guidelines Manual ch. 7, pt. A, introductory cmt. 3(b) (U.S. Sent'g Comm'n 2024))).

5

Williams's position is in tension with our post-*Esteras* precedent. We have held that the breach of trust rationale, which sometimes may sound in backward looking, retributive considerations, is fair game. *United States v. Patterson*, 158 F.4th 700, 702 n.2 (6th Cir. 2025) ("[Defendant] still insists that *Esteras*'s logic implies that courts can't consider *any* retributive consideration . . . . We disagree."); *see also United States v. Lopez*, No. 25-1644-cr, 2026 WL 112352, at *2 (2d Cir. Jan. 15, 2026) (mem.) ("[T]he district court's consideration of the seriousness of Lopez's *violations*, and reliance on its determination that it was obvious here that the breach of the Court's trust was extreme, was permissible under the Guidelines and our precedent, which was left undisturbed by *Esteras*." (citation modified)). The same is true of a district court's consideration of the seriousness of the supervised release violation conduct, which Williams claims is barred by § 3583(e). A sentencing court may consider the seriousness of a supervised release violation to the extent that it informs permissible considerations such as deterrence, protection of the public, and rehabilitation. *United States v. Sims*, 161 F.4th 455, 459 (6th Cir. 2025); *United States v. Welch*, No. 25-5136, 2026 WL 209787, at *2 (6th Cir. Jan. 27, 2026); *United States v. Spence*, 167 F.4th 882, 892 (6th Cir. 2026); *United States v. Simpson*, No. 23-3961, 2025 U.S. App. LEXIS 19442, at *3 (6th Cir. July 31, 2025) (mem.); *see also United States v. Panezo Tenorio*, No. 24-13143, 2025 WL 2305475, at *1 (11th Cir. Aug. 11, 2025) (after *Esteras*, a district court may "take into account the seriousness of their violation of the conditions of their supervised release"). "[N]othing in [*Esteras*]," in other words, "prohibit[s] a district court from considering the seriousness of the supervised-release violation" itself. *Sims*, 161 F.4th at 459 (citing *Patterson*, 158 F.4th at 702).

Williams takes issue with this conclusion, in particular our reliance on *Patterson*. Specifically, he faults *Patterson* for "treat[ing] *Esteras*'s silence on violation conduct as

dispositive," and believes we thus erred there by not "asking whether *Esteras*'s text-and-structure analysis abrogated" our pre-*Esteras* decisions that allowed a sentencing court to consider the violation's seriousness when imposing a sentence for the breach of trust caused by that violation. But whether we agree with *Patterson* and similar cases, as a subsequent panel we have no license to second guess their conclusions. *See Sykes v. Anderson*, 625 F.3d 294, 319 (6th Cir. 2010) ("[A] published prior panel decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision." (citation modified)); *see also United States v. Ferguson*, 868 F.3d 514, 515 (6th Cir. 2017) (noting our longstanding rule that one panel may not overrule the decision of another).

A.2. Even if we thought our precedent left the door open for Williams's argument that *Esteras* bars all considerations of retribution, his challenge would still fall short, because we do not read the district court as relying on retributive purposes when imposing Williams's revocation sentence. As a starting point, we presume that district courts understand and apply governing law, and we do not manufacture procedural error from sentencing remarks that, read in context, reflect reliance on proper factors. *See United States v. Vonner*, 516 F.3d 382, 392 (6th Cir. 2008) (en banc); *Spence*, 167 F.4th at 891–92. Here, we are assured that the district court grounded its revocation decision in permissible, forward-looking considerations, not any impermissible "backward-looking" purpose. *Esteras*, 145 S. Ct. at 2041; *see id.* at 2043–44.

The district court repeatedly framed its explanation for Williams's supervised release violation sentence in forward looking terms related to deterrence, a permissible factor under § 3553(a)(2)(B). *See Patterson*, 158 F.4th at 704. It began by emphasizing that the "consideration[s]" for a sentence tied to the revocation of supervised release are "very different"

7

from the sentencing considerations that undergird sentencing for an initial offense. No. 25-5257, R. 36, PageID 342. Speaking to the revocation context, the court described the relevant considerations in rehabilitative terms, explaining that supervised release is intended to "help the defendant readjust to society so they can lead a law-abiding, fruitful, and productive life." *Id.*; *see United States v. Williams*, 739 F.3d 1064, 1065 (7th Cir. 2014) (noting that descriptions about a defendant's transition to community life are rehabilitative). Next, after finding that Williams had violated the terms of his supervised release, the district court reiterated that, in considering an appropriate sentence, the court intends for "defendants [to do] well on supervised release so they will be productive and law-abiding citizens." No. 25-5257, R. 36, PageID 346. This emphasis on the forward looking, rehabilitative purpose of supervised release assures us that the district court did not rely on retributive factors when sentencing Williams.

Equally telling is what the district court did not say. *See Welch*, 2026 WL 209787, at *3. Namely, it made no reference to concepts like "just punishment" or the "seriousness of the offense," notions that may suggest a retributive rationale. *See, e.g.*, *Esteras*, 145 S. Ct. at 2043. At no point during the revocation hearing did the court emphasize the need to punish Williams. Indeed, the district court expressly segregated its views on the appropriate sentence for revocation from the sentence for the new charge, understanding the considerations for each to differ. *Cf. United States v. Hoyle*, 148 F.4th 396, 406 (6th Cir. 2025) (vacating a sentence where the district court's explanation blurred its punishment rationale for the underlying offense with its assessment of the supervised release violation). This reality cements the conclusion that the district court committed no procedural error under *Esteras*.

Williams is correct to note that a sentencing court's reference to "respecting the law can signify, under some circumstances, consideration of the retribution and punishment disallowed

under *Esteras*." *United States v. Milton*, Nos. 24-4066/4067, 2025 WL 2965822, at *6 (6th Cir. Oct. 21, 2025). But a sentencing court's emphasis on following the law may also signify consideration of deterrence goals. *See United States v. Martin*, 109 F.4th 985, 990 (7th Cir. 2024) (promoting respect for the law "is a way to deter further criminal conduct"). Here, the district court's brief reference to "respect for the law" in the context of Williams's revocation sentence is a stray comment that even when viewed in the most jaundiced manner cannot justify reversal. *See Esteras*, 145 S. Ct. at 2045 (suggesting that a "stray reference to a § 3553(a)(2)(A) factor" is not reversible error where the reference "was intended to bear on another § 3553(a) factor or merely prefatory"); *see also United States v. Hymes*, 19 F.4th 928, 934 (6th Cir. 2021) ("[O]ne stray comment at sentencing cannot establish a reversible sentencing error."). Read in context, the comment is better understood as a consideration of deterrence alone. After detailing Williams's "long history of criminal violations," No. 25-5257, R. 36, PageID 346, the district court explained that it intended to "impress upon [Williams] the necessity of obeying all the terms of his supervised release, not violating the law while he's on supervised release, and doing all that he can to make sure that he becomes the law-abiding and productive citizen that the Court wishes him to be," *id.* at PageID 346–47. In other words, the district court hoped Williams's sentence tied to his revocation of supervised release would help him "understand the importance of him complying with the law," thereby deterring him from committing future crimes. *Id.* at PageID 348. The goal of transforming Williams into a future law-abiding citizen sounds in deterrence, not retribution. *See United States v. Weaver*, 920 F.2d 1570, 1576 (11th Cir. 1991) (explaining that, in determining a sentence sufficient to deter future criminal conduct, a court should consider the defendant's criminal history to assess the likelihood of recidivism); *Esteras*, 145 S. Ct. at 2041.

Resisting this conclusion, Williams highlights the district court's reference to "all of the [§] 3553 goals," its statement that it needed to "impress upon" Williams the importance of compliance, and its repeated emphasis on "obeying" court orders and the terms of supervised release. No. 25-5257, R. 36, PageID 343, 346–47. Relatedly, he portrays the court's recurring references to a "violation of the trust" as reflecting a retributive purpose. *See, e.g.*, *id.* at PageID 348.

Read in context, however, none of these statements support Williams's characterization. The district court explicitly tied its concern about compliance and respect for court orders to forward looking aims, not to punishment for past conduct. *See id.* at PageID 346–47 (explaining that, absent a sentence sufficient to deter further violations, Williams was unlikely to become a "law-abiding and productive citizen"). The court's effort to "impress upon" Williams the importance of obeying the law reflects a concern for future compliance, not retribution for failing to do so in the past. *See Esteras*, 145 S. Ct. at 2043 (explaining that courts may consider past conduct insofar as it informs deterrence, public protection, or rehabilitation).

Nor does the district court's passing reference to "all of the [§] 3553 goals" alter our conclusion. No. 25-5257, R. 36, PageID 343. When determining whether the district court "relied" on retributive factors, *see Esteras*, 145 S. Ct. at 2045, we consider the record as a whole. *See United States v. Johnson*, No. 24-3787, 2026 WL 50666, at *3 (6th Cir. Jan. 7, 2026) (no procedural error where the district court mentioned that the supervised-release violation required a "serious sanction" and the defendant's history of violent crime). In one sense, the district court's statement that Williams needed more "deterrence, respect for the law, and specific deterrence" could be understood to include the goal of retribution. No. 25-5257, R. 36, PageID 343. But we take the district court to have made this observation with respect to Williams's respect for court

10

ordered conditions of supervised release not the underlying offense. After all, the district court did not mention retributive concepts such as just punishment or seriousness of the offense when explaining its sentence for the supervised release violation. In the end, a passing reference to the § 3553(a) factors and respect for the law, without more, does not imply that the district court "actually relied on § 3553(a)(2)(A)." *Esteras*, 145 S. Ct. at 2045.

Williams similarly misses the mark by focusing on the district court's references to a "breach of trust." To begin, the district court—as with its other statements emphasized by Williams here—invoked breach of trust to explain why prior supervision had failed, and why a more substantial sanction was necessary to deter further violations and rehabilitate Williams, not to impose punishment for punishment's sake. *See* No. 25-5257, R. 36, PageID 346–48. Chapter Seven of the Guidelines Manual includes a policy statement that instructs courts to "sanction primarily the defendant's breach of trust" when fashioning all revocation sentences. U.S. Sent'g Guidelines Manual ch. 7, pt. A, introductory cmt. (3)(b) (U.S. Sent'g Comm'n 2023). In doing so, the Commission frames the breach of trust rationale in contrast to punishment. *See id.* Although the Policy Statements are advisory and "not binding" on a district court, the court must at least "consider" them prior to imposing a sentence for revocation of supervised release. *See United States v. Johnson*, 640 F.3d 195, 208 (6th Cir. 2011) (explaining that although not binding, district courts "must consider § 7B1.3(f) when it is applicable").

In line with this guidance and as already explained, our precedent permits district courts to sanction the breach of trust associated with a violation of supervised release. *See id.* at 203; *United States v. Morris*, 71 F.4th 475, 482 (6th Cir. 2023). *Esteras* did not change that. *United States v. Hunter*, No. 25-3069, 2025 WL 3731056, at *2–3 (6th Cir. Dec. 26, 2025) (citing *Morris*, 71 F.4th at 482) (explaining that district courts may continue to consider the breach of trust rationale

because *Esteras* reserved the question and therefore does not abrogate our precedent allowing district courts to sanction a defendant's breach of the court's trust). What is more, other circuit courts to consider the issue after *Esteras* have not reversed a district court for treating supervised release violations as a breach of trust. *See, e.g.*, *United States v. Benton*, Nos. 24-4029/4030, 2025 WL 2389423, at *4 n.2 (4th Cir. Aug. 18, 2025); *United States v. Butler*, No. 25-12027, 2025 WL 2642292, at *3 (11th Cir. Sep. 15, 2025) (per curiam). In the end, taking account of both this authority and the district court's deterrent and rehabilitative framing of the breach of trust caused by the supervised release violation, we see no basis to conclude that the district court procedurally erred by considering an impermissible factor in fashioning Williams's revocation sentence.

B. Turn now to Williams's assertion that the district court failed to sufficiently explain its decision to impose consecutive sentences for his new conviction along with his revocation violation. In general, district courts enjoy discretion in assessing whether to impose consecutive or concurrent sentences. *King*, 914 F.3d at 1024–25. Should it choose to enter a consecutive sentence, the district court must account for the applicable § 3553(a) factors and applicable Guidelines and policy statements, though these advisements are not binding on the district court. *Johnson*, 640 F.3d at 208. And if the court ultimately decides to impose a consecutive sentence, it "'generally [must make] clear the rationale under which it has'" done so. *King*, 914 F.3d at 1025 (quoting *United States v. Hall*, 632 F.3d 331, 335 (6th Cir. 2011)). With respect to the supervised release setting in particular, at the time of Williams's sentencing, the Guidelines recommended that "[a]ny term of imprisonment imposed upon the revocation of . . . supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the

basis of the revocation of . . . supervised release." U.S. Sent'g Guidelines Manual § 7B1.3(f) (U.S. Sent'g Comm'n 2023) (titled "Revocation of Probation or Supervised Release").

Here, the district court plainly explained its rationale for ordering the sentence tied to the new drug trafficking conviction to run consecutively to the revocation sentence. Again, the Sentencing Commission's recommendation for defendants like Williams is that the revocation sentence shall run consecutively to any new sentence. *See id.* The district court explained that it agreed with that recommendation. As the district court put it, Williams's conduct caused two "separate harm[s]": His new criminal offense violated the law, and his breach of the terms of his supervised release "violat[ed] the trust that the [c]ourt's placed in him." No. 25-5257, R. 36, PageID 348; *see United States v. Lester*, 98 F.4th 768, 779 (6th Cir. 2024). Williams's supervised release violation, in other words, caused a "separate harm . . . above and beyond the new crime, and that's the violation of the trust that the [c]ourt placed in him." No. 25-5257, R. 36, PageID 348. In the end, his "significant and repeated breaches of the court's trust more than justified its decision to impose a consecutive sentence." *United States v. Hinojosa*, 67 F.4th 334, 347 (6th Cir. 2023).

Williams disagrees in multiple respects. He first contends that the then applicable § 7B1.3(f) provision applies only when the defendant is "*already* serving another sentence at the time of revocation." Appellant Br. That portrayal cuts too fine a distinction. As our cases reflect, we frequently interpret § 7B1.3(f) to allow a district court to impose sentences for new convictions and revocation sentences in the same hearing. *See, e.g.*, *United States v. Sears*, 32 F.4th 569, 572, 576 (6th Cir. 2022); *King*, 914 F.3d at 1024–25; *Milton*, 2025 WL 2965822, at *2, *4. Indeed, even Williams ultimately acknowledges that imposing consecutive sentences is in line with the current Sentencing Guidelines instructions.

Second, Williams asserts that the district court should have taken notice of proposed amendments to the Sentencing Guidelines regarding consecutive sentences. Those proposals, which were adopted several months after Williams's sentencing, recommended different language for probation and supervised release. The Sentencing Guidelines now instruct that "[a]ny term of imprisonment imposed upon the revocation of *probation shall be ordered* to be served consecutively to any sentence of imprisonment that the defendant is serving," U.S. Sent'g Guidelines Manual § 7B1.3(a)(1) (U.S. Sent'g Comm'n 2025) (emphasis added), but "[a]ny term of imprisonment imposed upon the revocation of *supervised release generally should be ordered* to be served consecutively to any sentence of imprisonment that the defendant is serving." *Id.* § 7C1.4(b) (emphasis added).

Multiple flaws plague his contention. To begin, Williams never asked the court to consider those amendments, and the court understandably "was not obligated to consider [a proposed amendment] *sua sponte*." *United States v. Jimenez*, 517 F. App'x 398, 400 (6th Cir. 2013) (per curiam). And even had Williams done so, "a district court applies the version of the Guidelines in effect at the time of sentencing," not as they might later be amended. *Huff v. United States*, 734 F.3d 600, 608 (6th Cir. 2013); *see also United States v. Simpson*, 138 F.4th 438, 455 (6th Cir. 2025). Add to all of this that, as Williams admits, the Guidelines still recommend consecutive sentences in situations like Williams's—meaning the Guidelines shift from mandatory language to a recommendation likely would not have meaningfully altered the district court's analysis.

Lastly, Williams returns to questioning the district court's breach of trust rationale. Yet that rationale was proper as to the imposition of consecutive sentences for the same reasons it was appropriate in informing his sentence arising from his supervised release violation. In neither instance did the district court appear to be imposing the sentence for punishment's sake, and, even

so, it is permitted to invoke punitive principles for the new violation, just not for the underlying criminal conviction.  *See Patterson*, 158 F.4th at 702; *Sims*, 161 F.4th at 459.

*     *     *     *     *

We affirm.